J-A03035-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FIRSTRUST BANK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILKINSON ROOFING AND SIDING, | : | |
| INC., EQUITABLE PROPERTY | : | |
| INVESTMENTS, I, LLC 20 WEST | : | No. 1108 EDA 2021 |
| PARK, LLC, KENNETH S. BALAGUR, | : | |
| KIMBERLY A. REITZ RICHARD | : | |
| BALAGUR | : | |
| | : | |
| | : | |
| APPEAL OF: 20 WEST PARK, LLC | : | |
| AND RICHARD BALAGUR | : | |

Appeal from the Order Entered May 6, 2021
In the Court of Common Pleas of Chester County Civil Division at No(s):
2019-02916-MJ

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED APRIL 11, 2022**

20 West Park, LLC (20 West Park), and Richard Balagur (collectively

Appellants)[1] appeal from the order entered in the Chester County Court of

_____

[1] As will be discussed below, Wilkinson Roofing and Siding, Inc. (Wilkinson), Equitable Property Investments, I, LLC (EPI), Kenneth S. Balagur, and Kimberly A. Reitz were named defendants in the underlying action. However, they were not listed on the notice of appeal or in the appellant's brief. Additionally, neither the corporations nor the individuals filed a notice with this Court pursuant to Pa.R.A.P. 908, indicating they had no interest in the outcome of the appeal. Therefore, pursuant to Rule 908, Wilkinson, EPI, Kenneth S. Balagur, and Reitz shall be deemed appellees. Moreover, 20 West Park and Richard Balagur are the only proper appellants.

Common Pleas, granting summary judgment to Firstrust Bank (Firstrust) against Wilkinson, EPI, 20 West Park, Reitz, Kenneth S. Balagur, and Richard Balagur. The order also denied Appellants' cross-motion for summary judgment. The central issue on appeal concerns a question of contract interpretation in a mortgage agreement. After careful review of the contract and the relevant law, we affirm.

This case arises from a dispute regarding the extent of Firstrust's mortgage lien on a commercial property located at 20 West Park Street, Lebanon, New Hampshire (the New Hampshire Property). *See* Order and Memorandum, 5/6/21, at 2. 20 West Park is the owner of the Property. *See id.* It is a limited liability company with Richard Balagur as the managing member. *See* Appellants' Motion for Summary Judgment Against Firstrust Bank Pursuant to Pa.R.C.P. 1035, 2/1/21, at ¶¶ 6, 8. The sole asset of the company is the New Hampshire Property. *See id.* at ¶ 7. Additionally, the company's membership interests at the time were as follows: (1) 45% by Richard Balagur; (2) 45% by Kenneth Balagur; and (3) 10% by a third party. *See* Firstrust's Motion for Summary Judgment, 1/28/21, at ¶ 7; *see also* Appellants' Answer to Firstrust's Motion for Summary Judgment, 2/26/2021, at ¶ 7.[2]

_____

[2] As indicated in the Appellants' brief, Richard and Kenneth Balagur are brothers. *See* Appellants' Brief at 26.

On February 19, 2015, Firstrust made a small business administration loan to Wilkinson[3] in the principal amount of $1,300,000.00, which was evidenced by a note (Note), dated the same day. *See* Order and Memorandum at 2. Kenneth Balagur executed the Note as president of Wilkinson. *See* Appellants' Motion for Summary Judgment Against Firstrust Bank Pursuant to Pa.R.C.P. 1035 at ¶ 5.

Wilkinson's indebtedness under the Note was guaranteed by 20 West Park pursuant to an Unconditional Limited Guarantee (Guarantee), as executed by 20 West Park. *See* Firstrust's Complaint, 3/19/19, at ¶¶ 12-13. The Guarantee contained a collateral provision pertaining to the New Hampshire Property, which provided, in relevant part:

> COLLATERAL/RECOURSE: The guarantee is limited to the amount Lender obtains from the following Collateral pledged by Guarantor:
>
> 20 West Park Street, City of Lebanon, County of Grafton, State of New Hampshire a/k/a/ Tax Map#: 91-232.

Firstrust's Motion for Summary Judgment, Exhibit C, Unconditional Limited Guarantee, 2/19/15, at 2. The lender is identified as Firstrust and the guarantor is 20 West Park. *See id.* at 1.

---

[3] Wilkinson primarily performed commercial roofing and siding projects, and was owned and operated by Kenneth Balagur. *See* Firstrust's Motion for Summary Judgment at ¶ 5; *see also* Appellants' Answer to Firstrust's Motion for Summary Judgment at ¶ 5. According to the complaint, Wilkinson, EPI, Kenneth Balagur, and Reitz all shared the last known address of 731 Pheasant Run, West Chester, Pennsylvania. *See* Complaint at ¶¶ 2-3, 5-6.

To secure the Note and 20 West Park's Guarantee, 20 West Park executed and delivered to Firstrust a Mortgage, Assignment of Rents, Security Agreement and Fixture Filing (Mortgage), which granted Firstrust a mortgage lien in and upon the New Hampshire Property. *See* Firstrust's Complaint at ¶ 15. Pertinent to this appeal, the Mortgage set forth a secured obligations provision and Paragraph 2.1(e) provided, in relevant part:

> The amount of this mortgage is $1,300,000.00. Notwithstanding that, **upon the sale of the Property** the Mortgagee agrees to release its lien and to limit its interest **in the Property to 45% of the proceeds received from the sale of the Property** after the first lien to Mascoma Savings Bank in the original amount of $1,045,000.00 and second lien to Mascoma Savings Bank in the original amount of $300,000.00 (and a maximum amount of $450,000.00) are satisfied. **The 45% represents Kenneth S. Balagur's membership interest in [20 West Park], which is the owner of the [New Hampshire] Property.**

Firstrust's Motion for Summary Judgment, Exhibit D, Mortgage, Assignment of Rents, Security Agreement and Fixture Filing, 2/19/15, at 3 (emphasis added).[4] As mentioned, the New Hampshire Property "was encumbered by

---

[4] The Assignment of Rents provided, in relevant part:

1. Until payment in full of all Obligations is made, the Assignee is authorized to either in its own name or in the name of the Assignors to do any and all things with reference to the Collateral that the Assignors might or could have done but for this Assignment including the rights:

    1.1 To receive, collect and receipt for any and all rents or other payments due under the Collateral; the receipt of the Assignee for such payments to be a full discharge therefore[.]

*(Footnote Continued Next Page)*

two mortgages held by Mascoma Savings Bank (MS Bank).  Those mortgages were in the amounts of" $1,045,000 and $300,000.  ***See*** Order and Memorandum at 2.  Notably, the lien held by Firstrust "pursuant to the Mortgage sat in third position." ***Id.***

Firstrust, Wilkinson, EPI, 20 West Park, Kenneth Balagur and Reitz also executed a Loan and Security Agreement (Loan Agreement).  ***See*** Appellants' Memorandum in Support of Motion for Summary Judgment Against Firstrust Bank Pursuant to Pa.R.C.P. 1035, 2/1/2021, at 5.  The Loan Agreement provided, in relevant part, similar language as set forth in the Mortgage:

> 2.2   Security.  As security for the due and punctual payment of the Note, performance under the Loan Documents, and to secure any and all other loans and credit accommodations made by the Lender to the Obligors (hereinafter the "Obligations"):
>
> 2.1.1. One or more Obligors, by executing and delivering the Mortgage and Security Agreement to the Lender simultaneously herewith, has granted to the Lender a first mortgage lien in the amount of the Loan on the property known as 1218 Caln Meetinghouse Road, Township of Caln, County of Chester, Commonwealth of Pennsylvania a/k/a

---

> \*   \*   \*

> 4.   The Assignors hereby authorize the Assignee to give notice in writing of this Assignment at any time to any tenant or other person having an interest in the Collateral.

Firstrust's Motion for Summary Judgment, Exhibit E, Assignment of Leases, Rents and Other Agreements, 2/19/15, at 2-3.  In other words, Firstrust could give notice to the tenants of the New Hampshire Property that it was authorized to collect rents.

Parcel Number 39-4-167 on the Tax Map (the "Caln Property"), a second mortgage lien in the amount of the Loan on the property known as 731 Pheasant Run, Township of Birmingham, County of Chester, Commonwealth of Pennsylvania a/k/a Parcel Number 65-4-40.37 on the Tax Map (the "Pheasant Run Property") and a third mortgage lien in the amount of the Loan on the property known as 20 West Park Street, City of Lebanon, County of Grafton, State of New Hampshire a/k/a Tax Map #:91-232 (the "New Hampshire Property")*, as more particularly described in the Mortgage and Security Agreement (collectively the "Premises");

* The amount of the Lender's mortgage on the New Hampshire Property is $1,300,000.00. Notwithstanding that, upon the sale of the New Hampshire Property the **Lender agrees** to release its lien and **to limit its interest in the New Hampshire Property to 45% of the proceeds received from the sale of the New Hampshire Property** after the first lien to Mascoma Savings Bank in the original amount of $1,045,000.00 and second lien to Mascoma Savings Bank in the original amount of $300,000.00 (and a maximum amount of $450,000.00) are satisfied. **The 45% represents Kenneth S. Balagur's member interest in 20 West Park, LLC, which is the owner of the New Hampshire Property.**

Firstrust's Motion for Summary Judgment, Exhibit F, Loan and Security Agreement, 2/19/15, at 3 (emphasis added).

Wilkinson defaulted on the Note, and consequently, Firstrust commenced non-judicial foreclosure proceedings against the New Hampshire Property pursuant to the terms of the Mortgage. *See* Firstrust's Motion for Summary Judgment, Exhibit G, Complaint with Petition for Declaratory Relief, 8/2/18, at ¶ 13.

Appellants originally filed a declaratory judgment action in New Hampshire, seeking a declaration that Firstrust's interest in the Property was

limited to the value of Kenneth Balagur's membership interest in 20 West Park. *See* Firstrust's Motion for Summary Judgment, Exhibit G, Complaint with Petition for Declaratory Relief, 8/2/18, at ¶ 34. The Superior Court of New Hampshire dismissed the action due to the forum selection clause in the Loan Documents, "which provided that Pennsylvania has exclusive jurisdiction to decide disputes regarding the Loan Documents." Trial Ct. Op., 7/23/21, at 1.[5] The court also stayed Firstrust's "real estate foreclosure action on the New Hampshire Property in anticipation of th[e Pennsylvania] court's interpretation of the Loan Documents at issue and [its] declaration of the scope of [Firstrust]'s mortgage lien." *Id.*

---

[5] The Loan Agreement provided the following: "Any and all disputes arising out of or under the loan documents shall be litigated in the Commonwealth of Pennsylvania and decided by a judge, sitting without a jury[.]" Firstrust's Motion for Summary Judgment, Exhibit F, Loan and Security Agreement at 11 (most capitalization removed). Whereas the Mortgage contained language that it "shall be governed by the laws of the State of New Hampshire." Firstrust's Motion for Summary Judgment, Exhibit D, Mortgage, Assignment of Rents, Security Agreement and Fixture Filing at 15. The New Hampshire court found that the latter provision articulated notice requirements that the mortgagee must follow to conduct a lawful non-judicial foreclosure and in Appellant's complaint, they did not allege improper foreclosure or a dispute regarding the terms and conditions of the mortgage. *See* Firstrust's Motion for Summary Judgment, Exhibit H, New Hampshire Ct. Order, 2/26/19, at 8. As the court pointed out, the Appellants sought a judicial determination as to the actual sum of money that 20 West Park owed as the guarantor of the loan at issue. *Id.* Moreover, the court stated that if Appellants had alleged the foreclosure was improper, the statutorily mandated notice requirements would apply but the forum selection clause would not because the claims would relate only to the foreclosure proceedings and not the loan agreement. *Id.*

Firstrust subsequently instituted this lawsuit in March 2019, by filing a complaint for declaratory judgment[6] against Appellants. In the complaint, the bank alleged it was entitled to 45% of the proceeds of the sale of the Property following payment of the two senior MS Bank mortgages.

Appellants filed an answer and new matter, asserting, *inter alia*, that Firstrust's mortgage and lien was limited to Balagur's membership interest in 20 West Park, and not the proceeds from the sale of the New Hampshire property.

In January 2021, Firstrust filed a motion for summary judgment.[7] Appellants filed a response, and subsequently, a cross-motion for summary judgment. On April 22, 2021, oral argument was held regarding both motions. On May 6, 2021, the trial court issued an order, granting Firstrust's motion and denying Appellants' motion.[8] The court "declared that the scope of [Firstrust]'s lien is controlled by the plain meaning of [Paragraph] 2.1(e) of

---

[6] ***See*** 42 Pa.C.S. §§ 7531 and 7541.

[7] Wilkinson, EPI, Kenneth Balagur, and Reitz did not respond to Firstrust's motion for summary judgment.

[8] Since Wilkinson, EPI, Kenneth Balagur, and Reitz did not respond to Firstrust's motion, the court granted summary judgment for Firstrust against them as well.

the Mortgage[.]" Trial Ct. Op. at 2. Appellants then filed a timely notice of appeal.[9]

Appellants raise the following issues on appeal:

A. Whether the Trial Court erred in concluding that the Appellants' understanding/interpretation of the Mortgage contradicts the plain language of the various loan documents, and that Appellants' argument with respect to the sentence in dispute, results in changing the meaning of the prior sentence in the Mortgage[?]

B. Whether the Trial Court erred in granting Firstrust Bank's Motion for Summary Judgment, and denying the Appellants' Motion for Summary Judgment, by misinterpreting the provision in the Mortgage describing how the Mortgage interest of the Bank is measured[?]

C. In the alternative, to the extent that there is any ambiguity in the Mortgage, it should be resolved in favor of the Appellants, as Firstrust Bank was the drafter of the loan documents.

D. Whether the Trial Court erred in concluding the intent of the parties would have been to execute a pledge agreement if there was an intent to limit the lien to Kenneth Balagur's membership interest[?]

E. Whether the Trial Court erred in failing to consider that there was no consideration provided to 20 West Park, LLC[?]

Appellants' Brief at 4-5.

Based on the nature of Appellants' claims, we will address their first four arguments together. First, Appellants contend that the trial court "incorrectly ruled that [the] 45% language present in [Paragraph 2.1(e) of] the Mortgage

---

[9] Appellants timely complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

represents 45% of the equity in the Property after payment of the first and second mortgages, instead of [Kenneth] Balagur's membership interest." Appellants' Brief at 16. They allege it is "undisputed" that the 45% did not reference "an equity interest in the [New Hampshire] Property after payment of the first and second mortgage[s]." *Id.*

Next, Appellants assert that the trial court "incorrectly conclude[d] that the second and third sentences of the Mortgage should not be read together" because in their view, it is "nonsensical" and "contradicts the plain meaning of the documents" Firstrust drafted. Appellants' Brief at 19. In support of this argument, Appellants point to the deposition testimony of Marcus Mies, Esquire,[10] wherein he answered that membership interest is different than property interest and that Paragraph 2.1(e) references membership interest. *Id.* at 20. Appellants argue the court "cannot erase the third sentence [of Paragraph 2.1(e)] with the stroke of a pen to rewrite and change the deal the parties negotiated. Appellant did not agree to this interpretation, nor did they authorize it[.]" *Id.* at 20-21.

Third, Appellants claim that to extent the court determined any ambiguity existed in the Mortgage, "it was required to be resolved in favor of the Appellants" since Firstrust drafted the document. Appellants' Brief at 21.

---

[10] Mies worked for the law firm representing Firstrust at the time with respect to different types of loans and loan documentation. *See* Appellants' Motion for Summary Judgment Against Firstrust Bank Pursuant to Pa.R.C.P. 1035, Exhibit F, Oral Deposition of March Mies, 11/17/20, at 9.

They contend the "writing must be construed most strongly against the party drafting it, and the interpretation which makes a rational and probable agreement must be preferred." *Id.* at 22.

Fourth, Appellant argue, in the alternative, that while they "do not concede the Mortgage is ambiguous, . . . if the Trial Court believed the Mortgage to be ambiguous, then it should have examined parol evidence[,]" which would have "confirmed that the Mortgage is limited to [Kenneth] Balagur's membership interest" in 20 West Park. Appellants' Brief at 23. For example, Appellants rely on statements made by Kenneth Balagur concerning his ownership interest in 20 West Park to Mies and Carl Bieber, Vice President of Firstrust. *See id.* at 26 (October 2014 email from Kenneth Balagur to Bieber discussing limited guarantors). Appellants refer to electronic communications evidence by Kenneth Balagur, in which he expressed "concerns about how the language of the Mortgage was drafted." *Id.* at 27. Appellants also point to deposition testimony by Mies and Bieber where they were asked whether they clarified with Kenneth Balagur that the 45% represented property interest as opposed to membership interest. *Id.* at 26-27. Both testified they believed that this understanding was conveyed to Kenneth Balagur. *Id.* Nevertheless, Appellants argue that Bieber "has no documents to support that statement, and the Mortgage, Loan Agreement, and Resolution directly contradict his position." *Id.* at 30 (emphasis omitted).

In addressing the grant of a motion for summary judgment, our standard of review is limited:

> When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.

***Gallagher v. Geico Indem. Co.***, 201 A.3d 131, 136-37 (Pa. 2019) (citations and quotation marks omitted).

Since the crux of Appellants' arguments concern a dispute over the terms of a contract, we are guided by the following: "Because a mortgage is a contract, it is subject to principles of contract law. We have explained that contract interpretation is a question of law over which our standard of review is *de novo.* Therefore, this Court is not bound by the trial court's interpretation of a contract." ***Enterprise Bank v. Frazier Family Ltd. P'ship***, 168 A.3d 262, 265 (Pa. Super. 2017) (citations and quotation marks omitted).

Moreover,

> [t]he cardinal rule in interpreting a contract is to ascertain the parties' intent. The court must construe the entire contract to arrive at its intent. If contractual terms are clear and unambiguous, they are deemed the best reflection of the parties' intent. If they are ambiguous, it is permissible to ascertain their

meaning through parol (*i.e.*, extrinsic) evidence. Contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. A contract is not ambiguous, however, merely because the parties do not agree on its construction. Nor does ambiguity exist if it appears that only a lawyer's ingenuity has made the language uncertain.

***Pass v. Palmiero Auto. of Butler, Inc.***, 229 A.3d 1, 5 (Pa. Super. 2020) (citations and quotation marks omitted). Additionally, "[w]here the language of the contract is ambiguous, the provision is to be construed against the drafter." ***State Farm Fire and Casualty Company v. PECO***, 54 A.3d 921, 928 (Pa. Super. 2012).

In granting the motion for summary judgment, the trial court explained its rationale as follows:

> During oral argument, both parties conceded that the second sentence of the relevant section is clear if it stood on its own: "Notwithstanding that, upon the sale of the Property the Mortgagee agrees to release its lien and to limit its interest in the [New Hampshire] Property to 45% of the proceeds received from the sale of the Property after the first lien to Mascoma Savings Bank in the original amount of $1,045,000.00 and second lien to Mascoma Savings Bank in the original amount of $300,000.00 and (maximum amount of $450,000.00) are satisfied." Mortgage, ¶ 2.1(e). The dispute hinges on whether the clarity of that second sentence is muddied, or, as [Appellants] argue, the meaning altered by the addition of the third sentence -- "The 45% represents Kenneth S. Balagur's membership interest in [20 West Park], which is the owner of the [New Hampshire] Property." *Id.*
>
> [Appellants] argue that [Kenneth Balagur] could only pledge the value of his membership interest in the entity that owned the [New Hampshire] Property and could not and did not pledge the interest to the Property. Moreover, [Appellants] state that "45% of the proceeds received from the sale" should really read and be modified by the third sentence to give the effect of reading a

- 13 -

pledge of 45% of the value of the membership interest of [Kenneth Balagur].

Such a reading flies in the face of the plain language of the various loan documents. The mortgage granted was for $1,300,000.00 and, as noted by [Appellants], the mortgage and guaranty were necessarily executed by [20 West Park] as the owner of the [New Hampshire] Property. It is [20 West Park] that granted a security interest in the Property – not [Kenneth Balagur]. [Firstrust] did agree to release its lien after receipt of 45% of the proceeds after [20 West Park] satisfied the senior lienholders. It defies logic to suggest that the third sentence noting the reason for using 45% in the portion of the second sentence reading "45% of the proceeds from the sale of the Property" transforms that plain and ambiguous language into 45% of the value of [Kenneth Balagur]'s membership interest.[3] Instead, the third sentence can be read in conjunction with the second sentence without need to changing wholesale the meaning of the second sentence – namely, that [Firstrust] agreed to limit its lien on the [New Hampshire] Property to net proceeds in a percentage equal to that of the percentage of interest [Kenneth Balagur] then owned in [20 West Park] as owner of the Property.

---

[3] In fact, the parties agreed that [Kenneth Balagur] now only owns approximately 11% of the entity and [Appellants] suggest that such reduction means the language should be further modified to allow payment of only 11% of the value of [Kenneth Balagur]'s membership interest.

---

Pledge agreements, convertible notes, and various other mechanisms exist by which the parties could have limited the amount of the lien to a value based on [Kenneth Balagur]'s membership interest. No such agreements were provided. There is no indicia of that being the intent of the parties within in Loan Documents as no pledge agreement exists, no restrictions or comments on the ability of [Kenneth Balagur] to transfer or encumber his membership interest in [20 West Park], no agreement to subordinate the bank's lien to any third parties (including [Appellants]), no method of calculating a minority member's interest in a closely-held entity, or the like. Instead, the parties executed a straight-forward mortgage pledging an

interest in real estate to secure a loan by one of the property owner's members.

> To the extent that [Appellants] (which notably does not include [Kenneth Balagur]) object now to the fact that it guaranteed a loan to [him] and pledged 45% of the net proceeds after payment of two senior liens from the sale of the Property as security and wish to limit it to the value of [Kenneth Balagur]'s membership interest in the entity,[4] that objection is too late. [Appellants] signed clear and unambiguous documents granting a security interest in property owned by [20 West Park] and gave a straight-forward and simple explanation of the amount required from a sale to release [Firstrust]'s lien on the [New Hampshire] Property.

---

> [4] As [Firstrust] notes in its reply to the Motion for Summary Judgment by [Appellants], it is unclear if the argument of [Appellants] is that the security was an encumbrance on [Kenneth Balagur]'s membership interest or the value of [his] membership interest. The result is the same no matter the argument.

Order and Memorandum at 4-6 (emphasis and one footnote omitted).

We agree with the trial court's well-reasoned conclusion that the document at issue is clear and unambiguous. First, we emphasize the fact that the document is a mortgage. Black's Law Dictionary defines "mortgage" as "[a] conveyance of title to **property** that is given as security for the payment of a debt or the performance of a duty and that will become void upon payment or performance according to the stipulated terms[;]" "[a] lien against **property** that is granted to secure an obligation (such as a debt) and that is extinguished upon payment or performance according to stipulated terms[;]" and "[l]oosely, any **real-property** security transaction, including a deed of trust." MORTGAGE, Black's Law Dictionary (11th ed. 2019)

(emphasis). *See also Estate of Dutton*, 37 A. 582, 586 (Pa. 1897) ("A mortgage is defined to be 'the conveyance of an estate or property by way of pledge for the security of the debt, and to become void upon payment of it.'"). Simply stated, a mortgage concerns property.

This leads us to the language of the Mortgage at issue – Paragraph 2.1(e), which we recite again:

> The amount of this mortgage is $1,300,000.00. Notwithstanding that, **upon the sale of the Property the Mortgagee agrees** to release its lien and **to limit its interest in the Property to 45% of the proceeds received from the sale of the Property** after the first lien to Mascoma Savings Bank in the original amount of $1,045,000.00 and second lien to Mascoma Savings Bank in the original amount of $300,000.00 (and a maximum amount of $450,000.00) are satisfied. **The 45% represents Kenneth S. Balagur's membership interest in [20 West Park], which is the owner of the [New Hampshire] Property.**

Firstrust's Motion for Summary Judgment, Exhibit D, Mortgage, Assignment of Rents, Security Agreement and Fixture Filing at 3 (emphasis added).

Appellants' argument focuses solely on the exact wording of the third sentence and asks to ignore the preceding language. However, we "may not disregard a provision in a contract if a reasonable meaning may be ascertained therefrom . . . each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Family Mkt., Inc.*, 98 A.3d 645, 654 (Pa. Super. 2014) (citation and quotation marks omitted).

- 16 -

Moreover, we also note that although the loan documents, including the Mortgage, were drafted by Firstrust, the sentence in question was included at the direction of Kenneth Balagur who reviewed and consented to its inclusion. In a January 22, 2015, email from Kenneth Balagur to Bieber, Balagur wrote: "I am not a lawyer but in theory the mortgage could include wording 3rd lien for 45% of the building representing the ownership position of Kenneth Balagur." Firstrust's Reply to Defendants' Objection to Firstrust's Motion for Summary Judgment, 3/23/2021, at Exhibit A, January 22, 2015 Email from Kenneth Balagur to Carl Bieber.[11] Thus, it cannot be construed against Firstrust. *See State Farm Fire and Casualty Company*, 54 A.3d at 928.

The third sentence that the parties have spent much time dissecting and arguing about does nothing to modify or alter the Mortgage, nor does it create an ambiguity. To the contrary, the sentence was included-at Kenneth Balagur's insistence, to explain why Firstrust's recovery was limited to "45% of the proceeds from the sale of the Property." Rather than creating an ambiguity, this sentence is declaratory and explanatory and confirms the

---

[11] *See also* N.T., 4/22/21, at 24 (counsel for Firstrust stating: "Membership interest. That language actually comes from Kenneth Balagur's email where he says, including wording, third lien for 45 percent of the building representing the owner – he says ownership position of Kenneth Balagur, clearly it wasn't ownership position. It was membership interest.").

Appellant's counsel confirmed Kenneth Balagur was the drafter of the third sentence at argument on January 27, 2022.

- 17 -

parties understanding that Kenneth Balagur owned only 45% of the LLC that owned the property. Therefore, Firstrust was precluded from attempting to recover, in a foreclosure proceeding, more of "the proceeds from the sale of the Property" than Kenneth Balagur would be entitled upon the sale of the Property. Read in context to the transaction as a whole, this sentence appears to have been included by Kenneth Balagur to insulate the 55% interests of his partners from execution by Firstrust.

We are mindful that these were sophisticated business parties[12] negotiating the terms of a loan and mortgage agreement concerning a considerable amount of money. While Appellants refer to a couple of comments made by Kenneth Balagur during negotiations, there is nothing in the loan documents to suggest that these sophisticated parties intended Kenneth Balagur's interest to be confined to his membership interest in 20 West Park, which owned the property, and not the actual property itself. Likewise, based on the facts, we can discern that the question of "membership interest" versus "property interest" is a distinction without a difference as the

_____

[12] While Appellants mention that Kenneth Balagur was not represented at the time of negotiations, that was at his own peril as a party's *pro se* status confers no special benefit on that individual.

sole asset of 20 West Park was the New Hampshire Property.[13] Therefore, Kenneth Balgur's interest solely derived from that property.

Furthermore, as the trial court emphasizes as evidence of the parties' intent, or lack thereof, no other documents were provided which would have established that the amount of the lien was based on Kenneth Balagur's membership interest. **See** Order and Memorandum at 5 ("[N]o pledge agreement exist[ed], no restrictions or comments on the ability of [Kenneth Balagur] to transfer or encumber his membership interest in [20 West Park], no agreement to subordinate the bank's lien to any third parties (including [Appellants]), no method of calculating a minority member's interest in a closely-held entity, or the like.").[14] Appellants do not address this finding or

---

[13] We reiterate the fact that the loan was guaranteed by 20 West Park, which identified the New Hampshire Property as the only collateral.

[14] At oral argument, the following exchange took place between the parties and the trial court which demonstrates Appellants' misconception:

> THE COURT: … If I stated to you[, counsel for Appellants] that generally speaking when I see a bank take a membership interest as a pledge that there's a whole different set of documents that goes along with that.
>
> [Appellants' Counsel]: Yes, your Honor, but those are not the documents that the bank drafted. The bank drafted these documents and that was relied upon by Mr. Balagur that the bank was drafting what everyone was in agreement to of what he actually owed.

*(Footnote Continued Next Page)*

refute otherwise in their brief. As for Appellants' argument concerning parol evidence, we need not address this claim in light of our above analysis. ***See*** ***Pass***, 229 A.3d at 5. Accordingly, Appellants' first four arguments lack merit.

With respect to their remaining claim, Appellants assert that the trial court "failed to factor in that [20 West Park] received no consideration for the transaction." Appellants' Brief at 32. They state, "There is no reason for [20 West Park] to further encumber [its] sole asset to the detriment of [its] other members who had no interest in [Firstrust]'s loan, and received no benefit for allowing the Mortgage to be placed on the Property." Appellants' Brief at 32.[15]

---

> THE COURT: Essentially, you're telling me the bank made a large mistake because they use[d] property documents when what they should have been using was . . . pledge agreement documents?
>
> [Appellants' Counsel]: Yes, your Honor.
>
>         \*     \*     \*
>
> [Firstrust's Counsel]: I'll reiterate that this was **not** a pledge of membership interest. This is a mortgage. There's a major difference between those two types of collateral. [Appellants'] argument . . . convolutes the issues as to whether the mortgage is a pledge agreement or not, which it's not. It's a mortgage and . . . the guarantee says . . . it's a lien on **real estate**. It's **not a lien on the membership interest**.

N.T., 4/22/21, at 22-23 (emphasis added).

[15] While Appellants did raise this issue in their concise statement, the trial court did not address it in its Rule 1925(a) opinion.

- 20 -

As Firstrust points out, this appeal concerns a declaratory judgment action, which sought a declaration as to the meaning of the contract at issue and the extent of its mortgage lien on the New Hampshire Property – this is not an action to enforce the mortgage and the issue of whether the mortgage is enforceable was not before the trial court. *See* Appellee's Brief at 27. As such, the question is not properly before this Court. However, it merits mention that 20 West Park executed the Mortgage. This fact is not in dispute and there is no mention in the record that Kenneth Balagur signed the documents on behalf of 20 West Park without the consent of its other members.

Accordingly, we conclude the trial court appropriately determined there were no genuine issues of material fact and properly entered summary judgment in favor of Firstrust. *See Gallagher*, 201 A.3d at 136-37.

Order affirmed.

Judge Dubow joins the Memorandum.

Judge Stabile files a Concurring/Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2022

- 21 -