J-A16044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| KELLY A. VELESARIS & DEMETRIOS C. VELESARIS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1602 MDA 2022 |
| OLEG LEONTIEV, M.D., LEBANON IMAGING ASSOCIATES, P.C., THE GOOD SAMARITAN HOSPITAL OF LEBANON, PENNSYLVANIA D/B/A WELLSPAN GOOD SAMARITAN HOSPITAL, AND WELLSPAN HEALTH | : | |

Appeal from the Order Entered October 12, 2022
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2018-02094

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: AUGUST 15, 2023**

In this medical malpractice action, Kelly A. Velesaris and her husband, Demetrios C. Velesaris (collectively, Appellants) take this appeal from the order entered in the Lebanon County Court of Common Pleas, granting summary judgment in favor of Oleg Leontiev, M.D., and Lebanon Imaging Associates, P.C.[1] (collectively, Dr. Leontiev).[2]  Appellants aver the trial court

---

[1] Appellants named Lebanon Imaging Associates, P.C. based on a claim of vicarious liability.  **See** Appellants' Complaint, 8/9/18, at ¶ 3.

[2] Appellants voluntarily sought to enter final judgment in favor of Dr. Leontiev to pursue the present appeal.  **See** Final Order, 10/12/22, at 1-2.

erred in determining that two of their expert witnesses were not qualified and competent to render opinions on causation. Based on the following, we affirm.

The underlying facts and procedural history are as follows. Kelly had several "routine bilateral mammogram[s]" performed in 2007, 2008, and 2013 at Tristan Radiology. *See* Appellants' Complaint at ¶¶ 13-15. All three studies "showed heterogeneously dense breast tissue with no evidence of malignancy." *Id.*

On October 25, 2014, she presented to Good Samaritan Hospital for an annual mammogram screening and Dr. Leontiev was the reviewing physician.[3] *See* Appellants' Complaint at ¶ 16.

> The study was compared to the prior three previous studies performed at Tristan. The results of this study, as interpreted by [Dr. Leontiev], revealed "scattered fibroglandular densities" with "no dominant masses, suspicious microcalcifications or areas of architectural distortion observed to suggest malignancy. [There were n]o significant changes when compared to prior studies." Dr. Leontiev assessed [Kelly] as Birads[4] Category 1-Negative."

*Id.*

Kelly returned to Good Samaritan on October 27, 2015, for her annual mammogram screening, which was again interpreted by Dr. Leontiev. This

---

[3] Dr. Leontiev is a board certified radiologist. *See* Dr. Leontiev's Answer and New Matter, 6/24/19, at ¶ 2. Kelly testified she never met Dr. Leontiev. *See* Dr. Leontiev's Brief in Support of Supplemental Omnibus Motion *in Limine*, 9/16/22, at Exhibit "B" (Oral Deposition of Kelly A. Velesaris, 9/9/19, at 27).

[4] "Birads" is the acronym for "Breast Imaging Reporting & Data System."

study was compared to the October 25, 2014, and the March 21, 2013, studies, and the results were substantially similar to the 2014 screening. *See* Appellants' Complaint at ¶ 17.

Kelly next returned to Good Samaritan on November 14, 2016, for a mammogram screening. This time, Jennifer Kegel, M.D. interpreted the study and compared it with the five previous studies. She "noted 'scattered fibroglandular densities. Focal asymmetry/architectural distortion, upper quadrant left breast.' Dr. Kegel assessed [Kelly] as Birads Category 0-Incomplete, and recommended [she] undergo further imaging and ultrasound in light of the findings." Appellants' Complaint at ¶ 18.

Kelly then went to the Milton S. Hershey Medical Center (Hershey) on November 17, 2016, for additional diagnostic testing. Appellants' Complaint at ¶ 19. "Results of the tests confirmed that a 'solid mass in the left breast [was] highly suggestive of malignancy." *Id.* Kelly was then "assessed as a Birads Category 5-Highly Suggestive of Malignancy." *Id.* A biopsy of Kelly's left breast was taken, "confirming a diagnosis of invasive left breast carcinoma." *Id.* at ¶ 20. "A breast [magnetic resonance imaging (MRI)] performed on November 23, 2016, at [Hershey] confirmed the presence of multiple additional suspicious masses, thereby precluding any option of breast-conserving surgery." *Id.* at ¶ 21.

On January 2, 2017, Kelly "underwent a bilateral mastectomy and a left axillary sentinel lymph node biopsy" at Hershey. Appellants' Complaint at ¶

22. "The results of the lymph node biopsy revealed left multifocal invasive breast carcinoma with ductal and lobular features, and extensive high nuclear grade ductal carcinoma in-situ, as well as micrometastic carcinoma in sentinel lymph nodes." *Id.* at ¶ 23. Kelly also underwent chemotherapy six weeks later. *See* Oral Deposition of Kelly A. Velesaris at 60. Additionally, she decided to undergo postmastectomy radiation. *Id.* at 90. Subsequently, she sought numerous breast reconstruction procedures.[5] Post treatment, Kelly has not been diagnosed with any recurrence of her breast cancer. *Id.* at 94-95.

On August 9, 2018, Appellants filed a complaint against Dr. Leontiev, and other entities,[6] alleging that the doctor's failure to timely detect and report radiologic mammographic evidence of cancer in Kelly's left breast based on

---

[5] Kelly acknowledges she has had five breast revision surgeries. *See* Appellants' Pretrial Statement, 2/28/22, at 1; *see also* Appellants' Brief at 6. Her treating radiation oncologist, Jennifer C. Rosenberg, M.D., stated that when a patient that has breast reconstruction, they can develop scar tissue after radiation. *See* Omnibus Motion *in Limine* of Defendants, Oleg Keontiev, M.D. and Lebanon Imaging Associates, P.C., Challenging Expert Evidence, 9/8/22, at Exhibit "A" (Oral Deposition of Jennifer C. Rosenberg, M.D., 2/21/20, at 32).

[6] Appellants also named The Good Samaritan Hospital of Lebanon, Pennsylvania d/b/a WellSpan Good Samaritan Hospital (Good Samaritan), and WellSpan Health (WellSpan) as defendants. Good Samaritan and WellSpan were dismissed from the underlying litigation pursuant to the trial court's October 5, 2022. Appellants do not challenge that portion of the trial court's order on appeal.

studies he reviewed on October 25, 2014, and October 27, 2015.[7] Moreover, Appellants averred:

> 27. As a **consequence of the delayed diagnosis** of left breast cancer, [Kelly] **required more aggressive, invasive treatment** and **lost any possibility of pursuing any breast-conserving, less radical options**. The delayed diagnosis **also diminished** [Kelly]'s chances of **achieving a complete cure.**
>
> 28. As consequence of the delayed diagnosis of left breast cancer, [Kelly] sustained **permanent and irreversible loss of both breasts**.

Appellants' Complaint at ¶¶ 27-28 (emphases added).

The parties exchanged numerous pleadings and motions. The matter was scheduled for trial on October 10, 2022. In their pretrial statement, Appellants identified two experts — a radiologist expert, Reni S. Butler, M.D., and a psychiatrist expert, Howard L. Forman, M.D. — who would testify that the delayed diagnosis caused the progression of Kelly's breast cancer, which necessitated the treatment chosen by Kelly. **See** Appellant's Pretrial Statement at 6 (unpaginated).

Dr. Butler's report provided, in relevant part:

> It is my opinion, to a reasonable degree of medical certainty, that the standard of care was breached at the time of interpretation of the 10/25/2014 and 10/27/2015 mammograms, due to a failure to identify interval development of new or increasing suspicious findings; a failure to recommend further evaluation with diagnostic mammography and ultrasound; and a

---

[7] Appellants originally filed their complaint in the Philadelphia Court of Common Pleas. The matter was subsequently transferred to the Lebanon County Court of Common Pleas pursuant to a stipulation by the parties.

failure to perform biopsy for histologic diagnosis. The misinterpretation of the mammograms from 10/25/2014 and 10/27/2015 fell outside the standards of acceptable professional practice and resulted in a delay of [Kelly]'s breast cancer diagnosis.

It is also my opinion, to a reasonable degree of medical certainty, that had a biopsy been performed after the 10/25/2014 or 10/27/2015 mammograms, [Kelly's] cancer would have been diagnosed earlier when she could have been treated less aggressively with breast conserving surgery. In this case as well as any other oncologic case, it is a well-accepted medical concept that the earlier the stage at which a malignancy is diagnosed, the better the prognosis for treatment and eventual outcome. The delay in diagnosis of [Kelly's] invasive breast carcinoma due to the failure to identify suspicious mammographic findings on 10/25/2014 or 10/27/2015 allowed her cancer to progress, led to more aggressive surgical treatment, and diminished her chances of [a] cure.

Dr. Leontiev's Motion *in Limine* at Exhibit "B" (Dr. Butler's Report re Kelly

Velesaris, 5/18/18, at 3-4 (unpaginated)).

Additionally, Dr. Forman's expert report stated, in part:

[Kelly]'s decision-making throughout the treatment of her breast cancer was not influenced by any mental illness.

\* \* \*

When [Kelly] was finally diagnosed, her physicians provided her a menu of treatment options. She chose from that menu. If the cancer had been diagnosed earlier, it is reasonable to conclude that menu would not have included as many of the disfiguring and systemic treatments [Kelly] received.

Dr. Leontiev's Motion *in Limine* at Exhibit "C" (Dr. Forman Report re Kelly

Velesaris, 6/7/21, at 8-9).

On September 8, 2022, Dr. Leontiev filed a motion *in limine*, asserting

Appellants' proposed experts, Dr. Butler and Dr. Forman, were "not qualified

to present opinions on causation in this matter where the specific care at issue is based in various disciplines of oncology." Dr. Leontiev's Motion *in Limine* at 7 (capitalization and emphasis omitted). Dr. Leontiev alleged that Dr. Butler's *curriculum vitae* did "not reflect any education, experience or training in oncology or the assessment and treatment of cancer." *Id.* Moreover, Dr. Leontiev stated Dr. Butler "does not diagnose cancer, recommend treatment plans, manage treatment plans, coordinate oncological specialties or generally follow an oncology patient." *Id.* Rather, the radiologist "interpret[s] studies and develop[s] impressions which recorded in reports then utilized by oncology providers." *Id.* Moreover, he stated that while "radiology is a necessary and integral step in the diagnosing and sizing of cancer, it can only disclose, at most, the existence of a tumor and sometimes, the size and extent of the disease." *Id.* Dr. Leontiev further asserted:

> The issues of causation in this matter relate solely to whether [Kelly] required more aggressive oncology treatment resulting from the alleged failure to detect. However, the size of the tumor alone is insufficient, as explained by each of [Kelly]'s treating providers, to perform this analysis even though that is the extent of information that can be offered by a radiologist.

*Id.* at 7-8.

As for Dr. Forman, Dr. Leontiev alleged that "it is difficult to find two medical specialties more unrelated to one another than psychiatry and oncology and there simply does not appear to be any basis for Dr. Forman to render causation opinions." Dr. Leontiev's Motion *in Limine* at 8. Dr. Leontiev

concluded that "neither of these individuals are qualified to render causation opinions in this matter."[8]  *Id.* at 9 (footnote omitted).

On October 5, 2022, the trial court entered an order, which addressed multiple motions, including Dr. Leontiev's motion *in limine* regarding Appellants' experts.  The order stated, in pertinent part:

4. The Omnibus Motion in Limine of [Dr. Leontiev] Challenging Expert Evidence is GRANTED, in part, and DENIED, in part, as follows:

(a.) Dr. Reni Butler and Dr. Howard L. Forman are prohibited from expressing an expert opinion as to causation, *i.e.*, whether [Kelly] would have had a more favorable prognosis for treatment and eventual outcome if the diagnosis of cancer had been made at the earlier date(s) suggested by the evidence adduced at trial.

(b.) Dr. Forman is prohibited from expressing an opinion as to whether any mental illness interfered with the decision-making process of [Kelly] regarding her cancer treatment.

Order, 10/5/22, at 3.

Upon receipt of the court's order, Appellants' counsel "notified the [trial c]ourt that they would not be able to make out a prima facie case of negligence

_____

[8] Dr. Leontiev also made the following comment:

Dr. Leontiev is not suggesting that Dr. Forman is unqualified to render a causation opinion relating to any alleged emotion injuries or disorders resulting from the alleged delay to detect.  However, this issue is separate and distinct from the issue of whether the alleged delay to detect require more aggressive treatment or actually resulted in harm to [Kelly].

Dr. Leontiev's Motion *in Limine* at 9 n.1.

due to [its] ruling on the Omnibus Motion in Limine." Trial Ct. Op., 12/23/22, at 4. Consequently, the court entered a final order on October 12, 2022, which granted summary judgment in favor of Dr. Leontiev and directed the prothonotary to enter final judgment in this matter. **See** Final Order, 10/12/22, at 1-2. Appellants filed a timely notice of appeal.[9]

Appellants present the following issues for review:

A. Whether [Appellants]' expert, Dr. Reni Butler, is qualified and competent to render opinions regarding causation[?]

B. Whether [Appellants]' expert, Dr. Howard Forman, is qualified and competent to render opinions regarding causation[?]

Appellants' Brief at 5.

Because both of Appellants' claims concern the court's grant of summary judgment in favor of Dr. Leontiev, which stemmed from the court's grant of Dr. Leontiev's motion *in limine* on the basis that Appellants were precluded from offering expert opinions regarding medical causation and an increased risk of harm,[10] we are guided by the following standards and principles.

In reviewing a challenge to the entry of summary judgment, we may disturb the trial court's order "only where it is established that the court

---

[9] Appellants complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. **See** Appellants' Concise Statement of Errors Complained of on Appeal, 11/14/22, at 1-2. The trial court issued a Pa.R.A.P. 1925(a) on December 23, 2022.

[10] **See** Final Order, 10/12/22, at 1.

committed an error of law or abused its discretion. As with all questions of law, our review is plenary." ***Pass v. Palmiero Auto. of Butler, Inc.***, 229 A.3d 1, 5 (Pa. Super. 2020) (citation omitted).[11]

Moreover, our standard of review of a ruling on a motion *in limine* is well-settled:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.

***Parr v. Ford Motor Co.***, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (citations & quotation marks omitted).

> When we review a ruling on the admission or exclusion of evidence, including the testimony of an expert witness, our standard is well-established and very narrow. These matters are within the sound discretion of the trial court, and we may reverse

_____

[11] Furthermore, we note Pennsylvania Rule of Civil Procedure 1035.2 provides:

> that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Pass***, 229 A.3d at 5 (citation omitted).

only upon a showing of abuse of discretion or error of law. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Freed v. Geisinger Med. Ctr.***, 910 A.2d 68, 72 (Pa. Super. 2006) (citations & quotation marks omitted).

Pursuant to Pennsylvania Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702(a)-(c).

The Medical Care Availability and Reduction of Error Act, 40 P.S. § 1303.101 *et seq.* (MCARE), sets forth additional requirements for expert testimony in medical professional liability actions. Specifically, MCARE provides, in relevant part:

**(a) GENERAL RULE.** — No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide

credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

**(b) MEDICAL TESTIMONY.—** An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

> **(1)** Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.
>
> **(2)** Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

40 P.S. § 1303.512(a)-(b).

> To prevail in any negligence action, the plaintiff must establish the following elements: the defendant owed him or her a duty, the defendant breached the duty, the plaintiff suffered actual harm, and a causal relationship existed between the breach of duty and the harm. When the alleged negligence is rooted in professional malpractice, the determination of whether there was a breach of duty comprises two steps: first, a determination of the relevant standard of care, and second, a determination of whether the defendant's conduct met that standard. Furthermore, to establish the **causation element** in a professional malpractice action, the **plaintiff must show that the defendant's failure to exercise the proper standard of care caused the plaintiff's injury**. **Expert testimony is generally required** in a medical malpractice action to establish several of elements: the proper standard of care, the defendant's failure to exercise that standard of care, and **the causal relationship between the failure to exercise the standard of care and the plaintiff's injury**.

*Freed*, 910 A.2d at 72-73 (citations omitted; emphases added). "[M]edical

opinion need only demonstrate, with a reasonable degree of medical certainty,

- 12 -

that a defendant's conduct increased the risk that the harm sustained by plaintiff would occur." ***Gradel v. Inouye***, 421 A.2d 674, 679 (Pa. 1980).[12]

Lastly, we note:

> In ***Hamil v. Bashline***, our Supreme Court adopted the relaxed "increased-risk-of-harm" standard for use in certain medical malpractice claims. 392 A.2d 1280, 1288 (Pa. 1978). In adopting this principle, the ***Hamil*** Court reasoned:
>
>> In light of our interpretation of [subs]ection 323(a) [of Restatement of Torts 2d,[13]] it follows that where medical causation is a factor in a case coming within that Section, it

_____

[12] Furthermore, it merits mention:

> [A]lthough it is preferable that the expert be in the same specialty as the defendant, that is not what the law requires in every case. Rather, "[t]he 'same subspecialty' ideal contained in [the MCARE Act] includes an express caveat, reflecting the Legislature's decision to afford the trial court discretion to admit testimony from a doctor with expertise in another specialty that 'has a similar standard of care **for the specific care at issue**.'"

***Vicari v. Spiegel***, 936 A.2d 503, 513-14 (Pa. Super. 2007) (citations & footnote omitted; emphasis in original).

[13] Subsection 323 provides, in part:

> **Negligent Performance of Undertaking to Render Services**
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
>> (a) his failure to exercise such care increases the risk of such harm . . . .

Restatement (Second) of Torts § 323(a).

- 13 -

is not necessary that the plaintiff introduce medical evidence in addition to that already adduced to prove defendant's conduct increased the risk of harm — to establish that the negligence asserted resulted in plaintiff's injury. Rather, once the jury is apprised of the likelihood that defendant's conduct resulted in plaintiff's harm, [subsection 323(a)] leaves to the jury, and not the medical expert, the task of balancing probabilities.

*Hamil*, 392 A.2d at 1288. Subsequently, our high court explained:

An example of this type of case is a failure of a physician to timely diagnose breast cancer. Although timely detection of breast cancer may well reduce the likelihood that the patient will have a terminal result, even with timely detection and optimal treatment, a certain percentage of patients unfortunately will succumb to the disease. This statistical factor, however, does not preclude a plaintiff from prevailing in a lawsuit. Rather, once there is testimony that there was a failure to detect the cancer in a timely fashion, and such failure increased the risk that the woman would have either a shortened life expectancy or suffered harm, then it is a question for the jury whether they believe, by a preponderance of the evidence, that the acts or omissions of the physician were a substantial factor in bringing about the harm. *See Jones v. Montefiore Hosp.*, 431 A.2d 920 (Pa. 1981).

*Mitzelfelt*, 584 A.2d at 892; *see Smith v. Grab*, 705 A.2d 894, 899 (Pa. Super. 1997) (stating expert's testimony demonstrating increased risk of harm "furnishes a basis for the fact-finder to go further and find that such increased risk of harm was in turn a substantial factor in bringing about the resultant harm") (quoting *Hamil, supra*).

*K.H. v. Kumar*, 122 A.3d 1080, 1104 (Pa. Super. 2015) (footnotes omitted).[14]

_____

[14] We acknowledge that we are not concerned with a jury based on the procedural posture of the case, but we do find the case law discussed *K.H.* helpful in our review.

In their first argument, Appellants complain the court erred in not permitting Dr. Butler "to testify as an expert as to increased risk of harm in that her credentials and experience reasonably and rationally envelop this issue." Appellants' Brief at 16. Moreover, they state:

> Not only the radiologic detection of a tumor or mass, but also its growth and potential negative impact if it goes undiscovered, are intertwined and often subject to a multi-disciplinary approach in diagnosis and treatment. Dr. Butler's extensive experience and knowledge of each of these aspects is well within her purview and an appropriate subject for her testimony.

*Id.* In support of their argument, they rely on two cases — ***Tong-Sommerford v. Abington Memorial Hospital***, 190 A.3d 631 (Pa. Super. 2018), and ***McFeeley v. Shah***, 226 A.3d 582 (Pa. Super. 2020).

Additionally, Appellants contend that the trial court ignored "an excerpt from Dr. Butler's report which relates directly to evidence of increased risk of harm from a radiologic perspective." Appellants' Brief at 20. They cite to the following:

> Careful side-by-side comparison with prior studies, a standard practice in mammographic interpretation, is essential for the early diagnosis of breast cancer. It is the goal of every reasonable and well-trained radiologist to detect new potentially significant findings on mammography at the smallest size at which they can be perceived. When such findings are allowed to grow, the benefit of screening mammography in reducing breast cancer mortality is diminished.

*Id.* (quotation marks omitted). Appellants maintain:

> This one paragraph demonstrates why early **detection** of suspicious findings leads to a better outcome. They go hand-in-hand. Thus, the failure of the radiologist to detect a tumor or mass in its early stages, by normal progression, gives an increase

- 15 -

risk of harm to the patient. This passage authored by Dr. Butler constitutes sufficient evidence that [Dr. Leontiev's] negligence in failing to detect a mass at its earliest stages naturally gave rise to an increased the risk of harm to [Kelly] from a radiologic or mammographic standpoint, about which Dr. Butler is certainly qualified to opine.

*Id.* at 20-21 (emphasis in original).

Here, the trial court opined the following:

[Appellants] countered [Dr. Leontiev's motion *in limine* argument] that Dr. Butler was qualified to render an opinion on causation by virtue of her education, training and experience in the detection of breast cancer and the effects of delayed diagnosis and as a result of her active engagement in the full-time teaching of medicine. [Appellants] pointed to Dr. Butler's Curriculum Vitae which revealed that she is an Associate Professor in Diagnostic Radiology in the Breast Imaging Section at Yale University and Yale New Haven Hospital. She is also involved with a multi-disciplinary task group at the Smilow Breast Cancer Center. From 2013 through 2016, she was the Yale Site Principal Investigator and National Co-Principal Investigator for a clinical trial called Pivotal Study of Imaging with Opto-acoustics to Diagnose Breast Masses Detected by Mammography and/or Clinical Findings. [Appellants] point out that Dr. Butler has also co-authored a number of publications pertaining to breast imaging and that she also has participated in various presentations and lecturers regarding breast imaging and treatment. [Appellants] argued that her 24 years of experience working as part of a multi-disciplinary team of breast cancer specialists, as well as her training, education and experience in mammography, qualifies her to recognize evidence of breast cancer and to evaluate the effects of a delayed diagnosis of breast cancer in general. [Appellants] argued that Dr. Butler's background qualified her to render an opinion on causation under Pennsylvania's liberal standards for the qualification of an expert.

[Appellants] claimed that [Kelly], at age 42, was deprived the chance at breast-conserving treatment due to the failure to diagnose the cancer, and subsequently underwent a bilateral mastectomy and, to date, five breast revision surgeries. Once the cancer was detected, [Kelly]'s treatment was determined after consultation with oncologists and that treatment plan was

- 16 -

managed and followed by oncologists. After reviewing Dr. Butler's Curriculum Vitae and her deposition, we agreed with [Dr. Leontiev] that, **although Dr. Butler was certainly qualified to render an expert opinion regarding the detection and progression of [Kelly]'s breast cancer, she was simply not qualified to provide an opinion on the management and treatment of the breast cancer and whether the delayed detection impacted [Kelly]'s prognosis or the treatment options available to [Kelly].**

Our review of Dr. Butler's Curriculum Vitae reveals that she does have an impressive background in her field of radiology, especially with regard to the detection of breast cancer. She has won awards for teaching diagnostic radiology, attains membership in various radiology/imaging organizations, has been published on topics of breast imaging, and has been involved in lectures on breast imaging. However, **there is little information to suggest that her experience has extended to knowledge and training on the effect a delayed diagnosis has on the severity of a patient's breast cancer and/or the necessity of a more aggressive treatment once the cancer has been detected**.

[Appellants] have provided Dr. Butler's Affidavit which was attached to [Appellants'] Brief in opposition to the Omnibus Motion in Limine. In the Affidavit, Dr. Butler affirms her involvement and vast experience in the field of radiology with emphasis on breast imaging. In addition, Dr. Butler states:

> 9. I have 24 years of experience working with a multi disciplinary team of breast cancer specialists. As part of my training, education and experience in mammography, **I am qualified to recognize evidence of breast cancer on mammography and to evaluate the effects of a delayed diagnosis of breast cancer in general terms.**

Dr. Butler's Curriculum Vitae describes her participation in the multi disciplinary team as follows:

> Ultimate Opinions in Medicine Panelist – national multi-disciplinary breast cancer expert opinion group formed to provide expert-level education and improve cancer care in the medical community at-large through virtual Tumor Board-like reviews of anonymized cases.

While we acknowledge Dr. Butler's inclusion in a team of specialists who deal with cancer treatment, **there is no indication of what role she has played on the multi-disciplinary team beyond the field of imaging, whether she is involved in assessing treatment options for a patient, and if so, what training and experience she relies upon in order to make such assessments**. Likewise, **there is no suggestion that once Dr. Butler determines the presence of indicators of breast cancer, she is involved in recommendations and/or management of specific treatment plans or with following through with a patient's cancer treatment**. We believe the circumstances of this case require that such information be provided by an oncologist. Moreover, it was [Appellants'] burden to prove that the delay in detection impacted [Kelly]'s condition and/or course of treatment. We do not believe that Dr. Butler's opinion, even if admitted at trial, would have established this vital part of [Appellants'] case.

Trial Ct. Op. at 6-10 (citations & quotation marks omitted; emphases added).

We discern no abuse of discretion with the trial court's conclusion that Dr. Butler was not competent to render an expert opinion on causation (including the increased risk of harm) to the requisite degree of medical certainty. At issue in this case is Dr. Leontiev's oncologic treatment and decision-making following the radiologic detection of Kelly's early-stage breast cancer. Appellants alleged that as a result of Dr. Leontiev's purported negligent actions, she had to undergo double mastectomies, chemotherapy, radiation, and multiple reconstructive surgeries. As such, Appellants' burden of proof was to demonstrate that Dr. Leontiev's alleged failure to timely detect the cancer increased the risk that such treatment was required and the ability to obtain less invasive treatment was not possible. *See Hamil*, 392 A.2d at 1288.

Dr. Butler's background demonstrates that as a radiologist, she is concerned with the detection of cancer, not the treatment of detected breast cancer. Notably, the doctor averred that while she has experience with working as part of a team of breast cancer specialists, she was qualified "to evaluate the effects of delayed diagnosis of breast cancer **in general terms**." Appellants' Brief in Opposition to Dr. Leontiev's Motion *in Limine* Challenging Appellants' Expert Evidence, 9/23/22, at Exhibit B (Affidavit of Dr. Butler, 9/13/22, at 1) (unpaginated) (emphasis added). This general averment is deficient where the law requires an expert's opinion demonstrate, with a reasonable degree of medical certainty, that a defendant's conduct increased the risk that the harm actually sustained by the plaintiff. *Gradel*, 421 A.2d at 679. Moreover, Appellants have not pointed to any part of Dr. Butler's education, experience, or skill set that demonstrates to what extent she is involved in the treatment and course of action following a diagnosis — Dr. Butler fails to specify whether she is involved in entire treatment program or just a specific part (meaning detection of the cancer).[15]

_____

[15] Notably, Appellant would need to demonstrate that the harm suffered by Kelly necessitated more invasive treatment — such as the radiation and chemotherapy. We note that at her deposition, Kelly acknowledged some of her doctors questioned the necessity of these procedures. *See i.e.* Oral Deposition of Kelly A. Velesaris at 89-93 (Kelly acknowledging that: (1) Dr. Kristine Widders, M.D., sent her a letter stating there was no indication for chemotherapy; (2) Dr. Jennifer Rosenberg, M.D., recommended that radiation would not provide a benefit in her case; and (3) Dr. Leah VonReyn Cream, M.D., discussed chemotherapy but advised against it).

We now turn to the cases Appellants relied on, ***Tong-Sommerford*** and ***McFeeley***, in their appellate argument. In ***Tong-Sommerford***, the plaintiff-decedent died after a feeding tube that was supposed to be inserted into his stomach was improperly placed into his lung by a hospital radiologist. The defendant-doctor incorrectly interpreted the x-ray image as "showing termination of the feeding tube in decedent's stomach when, in fact, it terminated in [decedent's] left lung." ***Tong-Summerford***, 190 A.3d at 637. The matter proceeded to a jury trial, where the decedent's expert was qualified to testify about increased risk of harm but not causation. ***Id.*** at 647. The jury returned a verdict in favor of the plaintiff and against the defendant-doctor and her employer. The defendant-doctor argued the trial court erred in failing to grant their motion for judgment notwithstanding the verdict (JNOV) due to the plaintiff's "failure to present competent evidence to support [the] negligence claim." ***Id.*** at 640. The defendants

> stress[ed] that while [the radiology expert] testified [the doctor] had breached the necessary standard of care when she did not order an additional study of the [decedent]'s chest upon realizing an abdominal study had been done, he did not testify that there had been a breach in the standard of care with regard to [the doctor]'s interpretation of the actual study performed.

***Id.*** They further contended:

> the trial court erred and abused its discretion when it only partially granted their motion *in limine* to preclude [the plaintiff]'s expert . . . from testifying to causation issues that allegedly exceeded his expertise. They maintain that as a radiologist, [the expert] did not possess the necessary training and experience to provide competent trial testimony pertaining to internal medicine and forensic pathology. . . .

- 20 -

*Id.* at 646.

A panel of this Court determined the trial court "did not abuse its discretion in permitting [the radiology expert] to opine that the deviations in the standard of care increased the risk of harm[.]" *Tong-Summerford*, 190 A.3d at 647. Relying on the trial court's reasoning, the panel noted: (1) the radiology expert's "qualifications as a board certified radiologist with 30 years of experience in the field of radiology qualified him to provide an expert opinion that the misplacement of a feeding tube in [the] decedent's lung increased the risk of harm to the decedent[;]" (2) the defendants' "claim of error is undermined by [the defendant-doctor's] own acknowledgment that a misplaced feeding tube into a patient's lung could increase the risk of harm to the patient[;]" and (3) "[i]t was within the province of the jury to weigh this testimony as to [the expert's] lack of knowledge in this regard which, arguably, undermined his earlier statements at trial concerning [the defendant-doctor's] failure to order another radiology study." *Id.* at 648.

Contrary to Appellants' argument, *Tong-Summerford* supports the trial court's conclusion in the present matter where the court precluded the radiology expert from testifying about causation as that issued exceeded the doctor's expertise. Appellants indicated that they would be calling Dr. Butler as a causation expert. As mentioned above, Appellants were relying on Dr. Butler's expert opinion to establish that the delayed diagnosis **caused** the progression of Kelly's breast cancer, which necessitated the treatment she

chose. Moreover, unlike in **Tong-Summerford**, Appellants have only proffered a generalized statement — *via* Dr. Butler — concerning the increased risk of harm. As such, Appellants' reliance **Tong-Summerford** is misplaced.

Next, in **McFeeley**, the plaintiff-decedent died following complications from a bowel perforation that stemmed from the delayed diagnosis of ovarian cancer. **McFeeley**, 226 A.3d at 586. The plaintiff filed a medical negligence complaint against the defendant-doctor, alleging the delay in diagnosis and treatment increased the risk of harm to the plaintiff. **Id.** One of the plaintiff's arguments was a claim that "the trial court erred in concluding that [the radiologist expert for the defense] qualified as an expert for causation purposes under the MCARE Act standard." **Id.** at 597.

A panel of this Court concluded "the trial court properly held [the radiologist] possessed the necessary qualifications to interpret radiology reports related to the gastrointestinal tract so as to provide competent testimony related to causation." **McFeeley**, 226 A.3d at 598. It merits mention that the panel also "agree[d] with the trial court's sound reasoning[, where the expert], a board-certified gastrointestinal radiologist, offered an opinion as to causation based on his review of CT scans, as well as a barium enema" and concluded "the trial court did not abuse its discretion in concluding [the expert] demonstrated that he has a reasonable pretension to specialized knowledge on the subject matter in question." **Id.** at 597 (citation & quotation marks omitted).

*McFeeley* is distinguishable from the present matter based on the following. The radiology defense expert in that case was permitted to offer a limited expert opinion to what caused the perforation (diverticulitis), not that a delayed diagnosis of cancer at an earlier stage increased the risk of harm that the decedent would suffer a perforation. Moreover, we point out that the plaintiff in *McFeeley* retained a gynecologist oncologist expert, who "explained that a staging system is used with regard to cancer in order to give a prognosis as to a patient's chances of surviving the cancer." *McFeeley*, 226 A.3d at 587. As such, Appellants' reliance on *McFeeley* is also misplaced.

Accordingly, we conclude the trial court did not abuse its discretion in precluding Dr. Butler from offering expert testimony on causation under the MCARE Act.

Regarding Appellants' second argument, they claim the trial court erred in failing to admit Dr. Forman as an expert witness regarding damages. *See* Appellants' Brief at 21. Specifically, they state:

> Dr. Forman met with Kelly on two occasions for the purpose of evaluating how her delayed breast cancer diagnosis impacted her emotionally and psychologically, and influenced her decisions regarding her treatment. He is not in any manner opining as to whether there was a delayed diagnosis of her cancer, or whether there was an increased risk of harm that occurred due to [Dr.] Leontiev's negligence. Rather, assuming these two issues to be true, he is evaluating the impact they had on Kelly's emotional state and her decision-making relative to her treatment, as well as the effect, in terms of damages, on her emotional health and well-being post-diagnosis.

- 23 -

*Id.* at 21-22. Moreover, Appellants assert that because Dr. Leontiev's defense focuses on

> whether the aggressive treatment Kelly chose to undergo was absolutely necessary[,] Dr. Forman's role is to explain, from a psychiatric point of view, how Kelly's state of mind, particularly with regard to her knowledge that there was a cancerous mass in her body for two years before it was discovered, impacted her treatment decisions following diagnosis.

*Id.* at 22. Appellants maintain "Dr. Forman's testimony is not offered to improperly boost the credibility of Kelly's testimony." *Id.*

Keeping our standards of review in mind, we note that in Dr. Forman is board-certified in general psychiatric medicine with a subspeciality in forensic psychiatry. *See* Trial Ct. Op. at 3. In his expert report, Dr. Forman averred the following, in relevant part: "When [Kelly] was finally diagnosed, her physicians provided her a menu of treatment options. She chose from that menu. If the cancer had been diagnosed earlier, it is reasonably to conclude that menu would not have included as many of the disfiguring and systemic treatments [Kelly] received." Dr. Leontiev's Motion *in Limine* at Exhibit "C" (Dr. Forman's Report re Kelly Velesaris, 6/7/21, at 9).

The trial court explained its rationale for precluding Dr. Forman as follows:

> Although [Dr. Forman] was identified as a damages witness, [his] report could be construed to refer to the effect the delayed diagnosis had on the possible worsening of [Kelly]'s cancer and the treatment options which became necessary as a result of the delayed diagnosis. Due to this possibility, [Dr. Leontiev] apparently proceeded with caution in including this aspect of Dr. Forman's opinion in the Omnibus Motion in Limine. We agreed

- 24 -

> with this assessment, and for that reason included Dr. Forman in our [October 5, 2022, order]. A review of Dr. Forman's report and Curriculum Vitae likewise reveals that based on his background in the field of psychiatry, he does not have the requisite background to render an opinion regarding the effects of the alleged delay in detection on [Kelly]'s prognosis and/or the treatment made necessary by the delay for her breast cancer. Thus, we precluded his testimony on that issue.

Trial Ct. Op. at 10. We agree with the trial court's rationale while adding these additional comments.

As Dr. Leontiev points out, he "never challenged Dr. Forman's competency to render causation opinions related to [Kelly]'s alleged emotional injuries." Dr. Leontiev's Brief at 35. Moreover, in his motion *in limine*, Dr. Leontiev specifically mentioned that he was not suggesting "Dr. Forman [was] unqualified to render a causation opinion relating to any alleged emotional injuries or disorders resulting from the alleged delay to detect." Dr. Leontiev's Motion *in Limine* at 9 n.1. Rather, he pointed out that that "issue is separate and distinct from the issue of whether the alleged delay to detect require more aggressive treatment or actually resulted in harm to" Kelly. ***Id.*** As such, Dr. Leontiev emphasizes that he "never challenged Dr. Forman's competency to render an opinion regarding how [Kelly]'s 'delayed breast cancer diagnosis impacted her emotionally and psychologically, and influenced her decisions regarding her treatment.'" Dr. Leontiev's Brief at 36, *quoting* Appellants' Brief at 21-22.

Moreover, a review of the record reveals that the trial court's October 5, 2022, order included a ruling relating to Dr. Forman's competency. ***See***

Dr. Leontiev's Brief at 35. Specifically, the court stated, in relevant part, Dr. Forman was precluded "from expressing an expert opinion as to causation, *i.e.*, whether [Kelly] would have had a more favorable prognosis for treatment and eventual outcome if the diagnosis of cancer had been made at the earlier date(s) suggested by the evidence adduced at trial." *See* Order, 10/5/22, at 3. However, the trial court's order did not include a finding that Dr. Forman lacked the competency to offer an expert opinion regarding Kelly's "delayed breast cancer diagnosis impacted her emotionally and psychologically, and influenced her decisions regarding her treatment." Appellants' Brief at 21-22. As such, his argument — that the trial court erred in finding Dr. Forman was precluded from providing expert testimony regarding the impact of Kelly's emotional state and her decision-making relative to her treatment — has no merit.

Furthermore, the trial court's October 5, 2022, order, also provided that "Dr. Forman is prohibited from expressing an opinion as to whether any mental illness interfered with the decision-making process of [Kelly] regarding her cancer treatment." Order, 10/5/22, at 3. However, a review of Appellants' concise statement reveals that they did not preserve a claim regarding mental illness expert testimony. The concise statement provided, in pertinent part:

> 2. [T]he trial court erred in entering summary Judgment in favor of [Dr. Leontiev], and against [Appellants] because the [court's] October 5, 2022, opinion which prohibited Dr. Howard Forman's testimony is in error. Again, **the reason for [the c]ourt's ruling is vague and not discernable from the record. However, Dr. Forman is a damages witness only and his testimony would**

- 26 -

**not include his own opinions regarding [Dr. Leontiev's] negligence or causation related thereto**. Dr. Forman is qualified under subsection (b) of the § 512 of the MCARE Act to testify, and to exclude him is in error, again for the reasons set forth in [Appellants'] Briefs in Opposition to [Dr. Leontiev's] Motions.

Appellants' Concise Statement at 2 (emphasis added). Accordingly, any claim regarding mental illness expert testimony is waived. *See* Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in the concise statement are waived); *see also* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived and cannot be raised for the first time on appeal). Therefore, Appellants' second argument is unavailing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023

- 27 -