J-S31026-19

2020 PA Super 32

| ROBERT J. PASS AND DOROTHY J. PASS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| PALMIERO AUTOMOTIVE OF BUTLER, INC., JON D. PALMIERO, AND KATHERINE R. WILLIAMS | |
| Appellees | No. 1769 WDA 2018 |

Appeal from the Order Entered November 16, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No: AR-18-002567

BEFORE:  OLSON, STABILE, and McLAUGHLIN, JJ.

OPINION BY STABILE, J.:                    **FILED FEBRUARY 11, 2020**

Appellants, Robert J. Pass and Dorothy J. Pass, appeal from an order granting the motion for summary judgment of Appellees, Palmiero Automotive of Butler, Inc., Jon D. Palmiero, and Katherine R. Williams, and dismissing Appellants' action with prejudice.  Appellants allege that Appellees committed fraud by selling them a used Honda 2015 CR-V ("the vehicle") with a defective roof and then refusing to compensate them when rain seeped in through the roof and damaged the vehicle.  We affirm.

Appellants alleged in their complaint that they visited Palmiero Automotive of Butler, Inc., on June 4, 2018, and a salesperson, Williams, showed them the vehicle.  Williams represented that the vehicle was of good quality and had no issues.  Appellees marketed the vehicle as a certified pre-owned vehicle, *i.e.*, a vehicle that is less than six years old, has fewer than

80,000 miles, and passed a 182-point Inspection CheckList ("CheckList"). The Checklist included a certification that the roof satisfied "paint finish and quality" standards. Appellants placed a down payment of $2,500 to purchase the vehicle.

On June 11, 2018, Appellants paid the balance of the total purchase price of $22,124.00. Appellants signed a Retail Purchase Agreement and a Buyer's Guide (sometimes collectively "the purchase documents") to complete the transaction.

The Retail Purchase Agreement contained several pertinent provisions. First, it stated:

> Any warranties by a manufacturer or supplier other than our Dealership are theirs, not ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and the related goods and services. If we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction, we may not limit or modify the implied warranties. CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY). **The information you see on the window form for this Vehicle [the Buyer's Guide] IS PART OF THIS CONTRACT. Information on the window form overrides any contrary provisions in the contract of sale** (emphasis added).

Second, the Agreement included the following "as-is" clause:

> [] AS-IS: THIS MOTOR VEHICLE IS SOLD AS-IS WITHOUT ANY WARRANTY EITHER EXPRESS OR IMPLIED. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE VEHICLE. We expressly disclaim all express or implied warranties, including any implied warranties of merchantability or fitness for a particular purpose.

J-S31026-19

This clause was not checked. Third, the Agreement included the following integration clause:

> **This Agreement and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this Retail Purchase Agreement** and no other agreement or understanding of any nature concerning the same has been made or entered into or will be recognized. **I have read all of the terms and conditions of this Agreement, and agree to them as if they were printed above my signature . . .**

[Emphasis added].

The Buyer's Guide includes the following important text:

[x] AS IS—NO DEALER WARRANTY
THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE.

[ ] DEALER WARRANTY

[ ] FULL WARRANTY.

[ ] LIMITED WARRANTY. The dealer will pay ___% of the labor and ___% of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty, and for any documents that explain warranty coverage, exclusions, and the dealer's repair obligations. Implied warranties under your state's laws may give you additional rights.

The box for "As Is—No Dealer Warranty" was checked.

On top of the next page of the Buyer's Guide, two boxes for two non-dealer warranties were checked: a manufacturer's used vehicle warranty and a service contract.

In addition, one of Appellees' representatives signed the Checklist to certify that all applicable items on the Checklist were inspected, all required

reconditioning was performed, and the vehicle was eligible to be a certified pre-owned vehicle.

On June 11, 2018, Appellants took the vehicle home. There were rain showers overnight while the vehicle remained parked outside Appellants' home. The following morning, Appellants discovered that the vehicle's interior was flooded due to a leak in the roof. Appellants called Appellees and demanded to return the vehicle either for complete reimbursement or for a new vehicle. Appellees rejected both proposals.

On July 17, 2018, Appellants filed a two-count complaint against Appellees alleging breach of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1-201-9.3, and common law fraud. Appellants alleged that Appellees misrepresented the quality of the vehicle and concealed the fact that its roof was defective. Appellees filed an answer to the complaint with new matter and then moved for summary judgment.

On November 13, 2018, the trial court granted summary judgment to Appellees. Appellants filed a timely notice of appeal, and the trial court filed a Pa.R.A.P. 1925(a) opinion without ordering Appellants to file a concise statement of issues raised on appeal.

Appellants raise three issues in this appeal:

1. Did the Trial Court abuse its discretion and commit an error of law by granting summary judgment when there were genuine issues of material fact to be resolved by a fact finder?

2. Did the Trial Court abuse its discretion and commit an error of law when it failed to consider whether Appellants' claims could be construed as fraud in the execution?

3. Did the Trial Court abuse its discretion and commit an error of law by denying Appellants leave to amend when amendment would not be futile?

Appellants' Brief at 4.

When we review a challenge to the entry of summary judgment,

[we] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. See Pa.R.C.P. No. 1035.2. The rule [provides] that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

**E.R. Linde Const. Corp. v. Goodwin**, 68 A.3d 346, 349 (Pa. Super. 2013).

Appellants argue that the Retail Purchase Agreement and the Buyer's

Guide are ambiguous because their "as-is" clauses are "susceptible to multiple

interpretations."[1]  Appellants' Brief at 15.  Based on this perceived ambiguity, Appellants claim that the trial court erred in entering summary judgment and should have admitted parol evidence to construe the parties' agreement.  We conclude the trial court's decision was correct.

The cardinal rule in interpreting a contract is to ascertain the parties' intent.  *Lesko v. Frankford Hosp.-Bucks Cty.*, 15 A.3d 337, 342 (Pa. 2011).  The court must construe the entire contract to arrive at its intent.  *Ramalingam v. Keller Williams Realty Group, Inc.*, 121 A.3d 1034, 1046 (Pa. Super. 2015).  If contractual terms are clear and unambiguous, they are deemed the best reflection of the parties' intent.  *Kripp v. Kripp*, 849 A.2d 1159, 1162 (Pa. 2004).  If they are ambiguous, it is permissible to ascertain their meaning through parol (*i.e.*, extrinsic) evidence.  *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001).  Contractual terms are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts."  *Id.* at 430.  A contract is not ambiguous, however, merely because the parties do not agree on its construction.  *Nicholas v. Hoffman*, 158 A.3d 675, 693 (Pa. Super. 2017).  Nor does ambiguity exist if it appears that "only a lawyer's ingenuity has made

---

[1] Appellants do not mention the Checklist in this argument.  *See* Appellants' Brief at 14-20.  Thus, we do not examine whether the Checklist is a source of ambiguity.  Appellants refer to the Checklist only in their second argument on appeal, which we discuss *infra*.

the language uncertain." ***Consolidated Rail Corporation v. ACE Property & Casualty Insurance Co.***, 182 A.3d 1011, 1026 (Pa. Super. 2018).

In this case, the Retail Purchase Agreement provides that (1) the Buyer's Guide was "part of" the parties' agreement; (2) the information in the Buyer's Guide "overrides any contrary provisions" in the Retail Purchase Agreement; and (3) any documents that are "part of this transaction or incorporated herein" comprise the entire agreement.  Thus, the parties intended the Retail Purchase Agreement and Buyer's Guide to be construed together, with the Buyer's Guide overriding any contrary provisions in the Retail Purchase Agreement.  The "as-is" clause in the Retail Purchase Agreement was not checked.  At the bottom of the same page, both Appellants signed the Retail Purchase Agreement.  Their signatures were directly beneath the provision that the parties' agreement included any documents that were "part of this transaction," *i.e.*, the Buyer's Guide. These facts make clear that Appellants reviewed the Buyer's Guide before signing the Retail Purchas Agreement.  Further, in the Buyer's Guide, the box was checked next to "AS IS—NO DEALER WARRANTY.  THE DEALER DOES NOT PROVIDE A WARRANTY FOR ANY REPAIRS AFTER SALE."  Directly beneath this text are boxes for a full dealer warranty and limited dealer warranty.  Neither of these boxes were checked.  At the top of the next page, two boxes were checked in the "Non-Dealer Warranties" section: a box stating "MANUFACTURER'S USED VEHICLE WARRANTY APPLIES" and a box providing a "service contract."  On the final

- 7 -

page of the Buyer's Guide, Appellants signed the signature line acknowledging receipt of this document. Viewed collectively, these facts demonstrate that Appellants reviewed both the Retail Agreement and Buyer's Guide, examined all of their options, elected **not** to obtain any dealer warranty, and instead selected two non-dealer warranties. Because there was no ambiguity, the trial court properly declined to admit parol evidence.

Appellants insist that the purchase documents are ambiguous due to textual differences between the "as-is" clauses in the Retail Purchase Agreement and Buyer's Guide. According to Appellants, the Retail Purchase Agreement's "as-is" clause absolves Appellees from repairing defects that arise before **or** after sale, but the Buyer's Guide's "as-is" clause has narrower language that only excuses Appellees from repairing defects arising after sale. Appellants further claim that the Retail Purchase Agreement's "as-is" clause precludes express or implied warranties, whereas the Buyer's Guide's "as-is" clause precludes only implied warranties. Based on these differences, Appellants argue that parol evidence is necessary to define the scope of the Buyer's Guide's "as-is" clause, and such evidence will demonstrate that Appellees remain responsible under this clause for pre-sale defects, including the leak in the vehicle's roof.

Appellants read too much into linguistic variations between the two "as-is" clauses. The Buyer's Guide's "as-is" clause conveys the same concept as the Retail Purchase Agreement: after the vehicle is sold, Appellees are not

responsible for "**any**" repairs, regardless of whether the defect necessitating the repair occurred before or after the sale. It is also telling that (1) the dealer's full and limited warranty boxes in the Buyer's Guide, directly beneath the checked "as-is" clause, are unchecked, (2) the non-dealer's warranties on the next page is checked, (3) Appellants signed the signature line on the final page of the Buyer's Guide acknowledging receipt of this document, and (4) Appellants signed the Retail Purchase Agreement directly beneath the provision that the parties' agreement included the Buyer's Guide. *Ramalingam*, 121 A.3d at 1046 (court must construe entire contract to decipher its intent). Had Appellants intended for Appellees to repair pre- or post-sale defects, they would have selected the full or the limited dealer warranty options instead of allowing these boxes in the Buyer's Guide to remain unchecked. Appellants eschewed these options, since the "as-is" option and non-dealer warranties were checked instead.

In their second argument, Appellants assert that summary judgment was improper because the court should have permitted parol evidence to demonstrate Appellees' fraud in the execution of the contract. Appellants state:

> Throughout the entire transaction, Appellees represented that the CR-V was a "certified pre-owned" vehicle and did not contain any material defects. Based upon these representations, [Appellants] understood the purchase agreement to not be "as-is" and that the guarantee of the vehicle's "certified" quality was included in the contract's terms. This guarantee was represented through the Honda Certified Pre-owned, 182 Point Inspection Checklist.

> Appellants understood this to be a document which was a part of the transaction and, as a result, the contract.

Appellants' Brief at 21. We hold that the fraud-in-the-execution doctrine does not apply to this case.

When the parties intend for a writing to be their entire contract, parol evidence is inadmissible to demonstrate fraud in the inducement of the contract, *i.e.*, "an opposing party made false representations that induced the complaining party to agree to the contract." ***Toy v. Metropolitan Life Ins. Co.***, 928 A.2d 186, 205 (Pa. 2007). To determine whether or not a writing is the parties' entire contract,

> the writing must be looked at and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties. An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

***Yocca v. Pittsburgh Steelers Sports, Inc.***, 854 A.2d 425, 436 (Pa. 2004) (citation and internal quotations and punctuation omitted). Conversely, parol evidence is admissible to demonstrate fraud in the execution of a contract, *i.e.*, to show that a party "was mistaken as to the terms and the actual contents of the agreement he executed due to the other's fraud." ***Toy***, 928 A.2d at 205.

Here, Appellants argue that Appellees "represented" through the Checklist that the vehicle was of sufficient quality, Appellants' Brief at 21, a claim that Appellants entered the contract due to fraudulent misrepresentations in the Checklist. This was merely a claim of fraud in the inducement, not an actionable claim of fraud in the execution.

Finally, Appellants argue that the trial court should have granted them leave to amend their complaint to allege breach of contract or negligent misrepresentation. We disagree. The decision whether to allow plaintiffs to amend their complaint lies within the sound discretion of the trial court, and we will not disturb that decision on appeal absent an abuse of discretion. **Romah v. Hygienic Sanitation Co.**, 705 A.2d 841, 857 (Pa. Super. 1997). The court need not grant leave to amend, however, where it reasonably appears that the amendment will be futile. **Stempler v. Frankford Trust Co.**, 529 A.2d 521, 524 (Pa. Super. 1987). Due to the integration clause in the Retail Purchase Agreement, parol evidence of negligent misrepresentation or breach of contract in the inducement of the contract is inadmissible. **HCB Contractors v. Liberty Place Hotel Assoc.**, 652 A.2d 1278, 1279 (Pa. 1995). Further, claims of negligent misrepresentation and breach of contract flounder because the Retail Purchase Agreement and Buyer's Guide demonstrate that Appellants opted to obtain non-dealer warranties but not a dealer warranty.

Order affirmed.

Judge Olson joins opinion.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2020