**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHIPPENSBURG LOT 8, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CUMBERLAND VALLEY REGIONAL | : | No. 57 MDA 2025 |
| DEVELOPMENT CORPORATION AND | : | |
| MATRIX SHIPPENSBURG I, L.P. | : | |

Appeal from the Order Entered December 10, 2024
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2020-02673

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY LANE, J.:                **FILED: JANUARY 14, 2026**

Shippensburg Lot 8, LLC ("Plaintiff"), appeals from the order denying its motion for summary judgment, and granting the motion of Cumberland Valley Regional Development Corporation ("CVRDC") for summary judgment.[1]  We affirm.

The trial court summarized the underlying facts as follows.  CVRDC owned "United Business Park - Lot 8 ('the Property') in Franklin County, Pennsylvania."  Trial Court Opinion, 1/12/22, at 1.  In 2016, CVRDC and Matrix Shippensburg I, L.P. ("Matrix") entered into a "Right of First Refusal ('ROFR')

---

[1] For ease of discussion, we refer to these parties with the same shorthand designations, "Plaintiff" and "CVRDC," employed by the trial court.

Agreement" with regard "to the Property and other properties located in United Business Park." *Id*.

The ROFR Agreement set forth the following terms. In the event CVRDC intended to sell the Property, CVRDC must first provide Matrix with a notice, termed a "Disposition Notice," identifying the property, the proposed purchaser, and the material terms of the proposed transaction. Matrix then had the right to purchase the Property "at the price and on the terms and conditions set forth in the Disposition Notice." ROFR Agreement, 6/8/16, at unnumbered 2, Ex. 1 to Amended Complaint, 3/2/22. If Matrix wished to exercise this right, it must send written notice to CVRDC within fifteen days of receipt of the Disposition Notice. If Matrix gave such notice, then Matrix and CVRDC "shall . . . enter into an agreement of sale[.]" *Id*.

If, however, Matrix did not provide proper and timely notice, or if it notified CVRDC that it waived its right, then CVRDC "shall be free to effect a disposition of the . . . Property to the identified transferee at a price . . . not less than the price . . . set forth in the Disposition Notice ***and on the terms of the Disposition Notice***." *Id*. at 4 (some capitalization omitted and emphasis added). The ROFR Agreement defined any such sale to a prospective transferee, which satisfied these requirements, as a "Complying Disposition." *Id*. If a "Complying Disposition is so effectuated, Matrix's right of first refusal shall expire . . . and be of no further force or effect." *Id*. On the other hand, if CVRDC does not sell the Property

- 2 -

pursuant to an agreement on terms which would be a Complying Disposition . . . within one (1) year . . . , then Matrix's right of first refusal will be reactivated [and CVRDC] would be required to give a new Disposition Notice . . . which would again trigger Matrix's right of first refusal.

*Id*.

Almost four years later, in 2020, CVRDC engaged in negotiations with Plaintiff for the sale of the Property, and they reached an agreement with respect to the material terms. Thus, in March 2020, CVRDC issued a Disposition Notice ("First Disposition Notice") to Matrix, which stated CVRDC's intent to sell the Property to Plaintiff, a sale price of $4,000,000, and anticipated terms regarding the deposit amount, due diligence period, and closing date. At this time, Matrix did not exercise its right to purchase the Property.[2]

In July 2020, Plaintiff and CVRDC executed a formal agreement of sale (the "Agreement") for Plaintiff to purchase the property. This Agreement set forth the same $4,000,000 sale price that was in the First Disposition Notice to Matrix. However, the terms regarding the deposit amount, due diligence

---

[2] Plaintiff, CVRDC, and Matrix extensively litigated the issues of whether the First Disposition Notice was valid and whether Matrix waived its right of first refusal in response. ***See*** Trial Court Opinion, 12/18/23, at 6-7; ***see also*** Trial Court Opinion, 1/12/22, at 6-7. The trial court held in the affirmative on both questions. As Plaintiff does not challenge these rulings on appeal, for brevity we merely summarize above that: (1) CVRDC sent a First Disposition Notice in March 2020; and (2) Matrix opted not to purchase the Property.

period, and closing date differed from those in the First Disposition. Trial Court Opinion, 12/18/23, at 8.

Saliently, Section 6.22 of the Agreement referred to the ROFR Agreement as follows:

> 6.22 **Contracts; ROFR.** There are no unrecorded agreements, documents or contracts affecting the Property, other than the ROFR. The ROFR has been waived and released by Matrix . . . effective April 7, 2020, **subject to** the ROFR requirement to complete the transactions provided for in this Agreement as a Complying Disposition (as defined in the ROFR) within one (1) year of such release.

Agreement of Sale, 7/10/20, at 11 (emphasis added).

Following the execution of the Agreement, Plaintiff sought title insurance for the Property. The title insurance company required "the recording of an executed formal waiver of the ROFR by Matrix." Trial Court Opinion, 1/12/22, at 2. However, in August 2020, CVRDC informed Plaintiff "that Matrix was refusing to tender the written ROFR waiver and was disputing the validity of the [First] Disposition Notice." **Id**.

On August 18, 2020, CVRDC issued a second Disposition Notice ("Second Disposition Notice") to Matrix. Matrix sent a timely letter to CVRDC, electing to purchase the Property on the terms set forth in the Second

Disposition Notice.[3] CVRDC did not complete the sale of the Property to Plaintiff.

In September 2020, Plaintiff commenced the underlying suit against CVRDC and Matrix, raising claims of breach of contract, equitable estoppel, and tortious interference with a contract.[4] *See* Amended Complaint, 3/2/22, at 20, 22, 24, 26. We note there was voluminous pre-trial litigation, which included CVRDC's answer to the complaint; CVRDC's cross-claims against Matrix; Matrix's preliminary objections to both the complaint and CVRDC's cross-claims; Plaintiff's amended complaint; Matrix's new preliminary objections; and CVRDC's and Matrix's motions for summary judgment. The trial court heard oral argument on several of these filings. We summarize the court's relevant rulings, which led to and provide necessary context to the underlying grant of summary judgment in favor of CVRDC.

First, on December 18, 2023, the trial court found that the terms of the ROFR Agreement were clear and unambiguous. Additionally, the court determined: (1) the March 2020 First Disposition Notice, from CVRDC to

_____

[3] The parties litigated the issue of whether Matrix's letter in response to the Second Disposition Notice was timely. The trial court determined it was, and Plaintiff does not challenge this finding on appeal. *See* Trial Court Opinion, 12/18/23, at 11-13.

[4] Plaintiff's amended complaint did not claim it paid a deposit to CVRDC, but rather requested, *inter alia*: specific enforcement of the Agreement; judgment against Matrix of more than $10,000,000; and punitive damages of more than $30,000,000. *See* Amended Complaint, 3/2/22, at 20, 28.

Matrix, was valid; and (2) Matrix waived its right of first refusal. **See** Trial Court Opinion, 12/18/23, at 7.

Next, the trial court reviewed whether the Agreement, between CVRDC and Plaintiff, was a Complying Disposition as contemplated by the ROFR Agreement.[5] In comparing the First Disposition Notice and the Agreement, the trial court found the terms regarding the deposit amount, due diligence period, and closing date were different.[6] The court thus concluded: (1) the Agreement of Sale was not a Complying Disposition that would "extinguish Matrix's right of first refusal on the" Property; (2) thus, "Matrix's right of first refusal [was] reactivated and CVRDC [was] required to issue a new Disposition Notice to Matrix;" and (3) CVRDC and Plaintiff could not proceed with their sale agreement. **See** Trial Court Opinion, 12/18/23, at 10.

Having reached the above conclusions, the trial court next found that CVRDC properly issued, in August 2020, the Second Disposition Notice. The court further found that Matrix's response, that it wished to purchase the

---

[5] As stated above, a Complying Disposition would be the sale of the Property, by CVRDC to an identified transferee, "on the terms" and at a price "not less than the price" set forth in the disposition notice given to Matrix. ROFR Agreement, 6/8/16, at unnumbered 4.

[6] On appeal, Plaintiff claims that it requested the increase of the deposit amount, enlargement of the due diligence period, and change of the closing date because of "the uncertainty and . . . lockdowns . . . of the then emerging COVID-19 pandemic," and it did not believe these amendments were material. Plaintiff's Brief at 11, 12. Nevertheless, Plaintiff does not formally challenge the trial court's conclusion that these changes in the terms rendered the Agreement to **not** be a Complying Disposition.

Property and was exercising its right of first refusal, was valid and timely under the ROFR Agreement.[7] *See id*. at 11, 13.

Following these rulings, the parties stipulated to the discontinuance of the remaining claims between Plaintiff and Matrix. Plaintiff and CVRDC each filed the underlying motions for summary judgment against each other. Plaintiff maintained that CVRDC breached the Agreement, where Section 6.22 contained an express representation and warranty, by CVRDC, that Matrix had in fact waived its right of first refusal. Plaintiff further averred that other provisions of the Agreement absolutely required CVRDC to obtain a written waiver from Matrix, but CVRDC failed to do so. Trial Court Opinion, 12/10/24, at 4. CVRDC responded that the statement in Section 6.22, that "Matrix had waived its right of first refusal," was "subject to" the sale between CVRDC and Plaintiff being a Complying Disposition. *Id*. at 5. CVRDC thus denied that it breached the Agreement.

On December 10, 2024, the trial court issued the underlying order, granting CVRDC's motion for summary judgment and denying Plaintiff's motion for summary judgment. The court rejected Plaintiff's contention that Section 6.22 was a representation or warranty by CVRDC that Matrix had in fact waived its right of first refusal. *See id*. at 4. Instead, the court found

---

[7] The parties disputed whether Matrix's response, to exercise its right of first refusal, was timely. The trial court found it was timely, and Plaintiff does not challenge this finding on appeal.

that "the 'subject to' language created a condition precedent" — that the anticipated sale between CVRDC and Plaintiff meet the definition of a Complying Disposition — that "needed to be satisfied before the parties had a duty to perform under the Agreement." *Id*. at 6-7. Based on its earlier finding that "a Complying Disposition never materialized," the court concluded that "CVRDC was incapable of breaching the Agreement under Section 6.22." *Id*. at 8.

The trial court denied relief on Plaintiff's additional argument that, aside from Section 6.22, CVRDC breached other provisions of the Agreement that purportedly required CVRDC to deliver an ROFR waiver from Matrix. The court considered the full context of one of these provisions, Section 5.1.5 — that CVRDC must provide an ROFR waiver that was in its "actual possession or control." Trial Court Opinion, 12/10/24, at 8-9. The court reasoned "that CVRDC never physically had a [valid] waiver of the ROFR from Matrix in [its] possession, [and] therefore CVRDC was never in any position to deliver it to Plaintiff or the title company[.]" *Id*. at 9. Furthermore, the trial court rejected Plaintiff's claim "that CVRDC did not exhaust all of its available remedies to force Matrix to hand over the waiver of the ROFR." *Id*. The court reasoned: "[I]t is important to note[] that even if CVRDC possessed the waiver from Matrix, it would not have been possible for CVRDC to breach the Agreement . . . because . . . the Agreement's terms did not match the terms of the [First D]isposition [N]otice that had been waived by Matrix, a requirement of the

ROFR [Agreement] between Matrix and CVRDC." ***Id***. Finally, on the same reasoning, the trial court denied relief on Plaintiff's claims of breach of a covenant of good faith and fair dealing.

Plaintiff filed a motion for reconsideration, but before the trial court ruled on it, Plaintiff filed a timely notice of appeal.[8] Both Plaintiff and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Plaintiff raises six issues for our review:

[1.] While ultimately not dispositive of the issues before the court, did the trial court also err in granting summary judgment in favor of [CVRDC] and against [Plaintiff] where the trial court's conclusion that Section 6.22 of the Agreement — an express representation and warranty — somehow created a condition precedent to closing that was not satisfied is (a) contradicted by a plain reading of the Agreement, (b) does not remotely reflect the intentions of the parties when the context of the agreement is considered, and (c) is not a proper interpretation of the clause under rules of contractual interpretation?

[2.] Should the trial court's grant of summary judgment in favor of [CVRDC] and against [Plaintiff] be overturned where the trial court failed to consider or properly apply binding Pennsylvania Supreme Court precedent cited by Plaintiff holding that a claim arising from a failed representation or warranty is a strict liability offense, and the intent or mindset of the maker is immaterial?

[3.] Because the record before the trial court established multiple express breaches of the Agreement, including, *inter alia*, [CVRDC's] violation of the "no shop clause" found in Section 8.2 of the Agreement by offering the Property to Matrix, and [CVRDC's] failure to comply with its

---

[8] ***See J.P. v. J.S.***, 214 A.3d 1284, 1289 (Pa. Super. 2019) (stating that "a motion for reconsideration does not toll the appeal period unless the trial court expressly grants reconsideration within 30 days of the appealable order").

unconditional duties under Sections 4.1, 4.2 and 5.1.5 to deliver a ROFR waiver and to clear title defects, did the trial court err in granting [CVRDC's] motion for summary judgment and in denying [Plaintiff's] motion for summary judgment?

[4.] Because the trial court's Order of December 18, 2023 foreclosed [CVRDC] from complying with its most fundamental duty under the Agreement — to sell and convey clear title to the Property to [Plaintiff] (*see* Section 2 of the Agreement) did the trial court err in granting [CVRDC's] motion for summary judgment and in denying [Plaintiff's] motion for summary judgment?

[5.] Based upon the record before the court should this Honorable Court overturn the decision of the trial court, and deny [CVRDC's] motion for summary judgment and grant [Plaintiff's]?

[6.] Did the trial court err in excusing [CVRDC] from performance by improperly applying the physical possession test, which is not accepted under Pennsylvania law, and which is not relevant given that under multiple provisions of the Agreement [CVRDC] obligated itself to deliver a ROFR waiver and clear title without condition or caveat and subject to the risk of monetary damages if it failed to do so?

Plaintiff's Brief at 4-5 (unnecessary capitalization omitted and issues reordered for ease of review).[9]

_____

[9] We note with displeasure that the argument section of Plaintiff's brief does not set forth the same number of issues, nor the same order of issues, as those in its statement of questions involved. The argument section sets forth three main headings — A., B., and C. We address them each, albeit in a different order for ease of discussion. We remind counsel that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type . . . — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a).

In its first issue, Plaintiff avers the trial court erred in concluding Section 6.22 of the Agreement created a condition precedent. We first consider the applicable standard of review. We may disturb an order granting summary judgment

> only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.[Civ.] 1035.2. The rule [provides] that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Pass v. Palmiero Automotive of Butler, Inc.*, 229 A.3d 1, 5 (Pa. Super. 2020) (citation omitted).

With respect to reviewing a contract, we note the following principles. "[C]ontract interpretation is a question of law[;] our review of the trial court's decision is *de novo* and our scope of review plenary." *Dressler Family, LP v. PennEnergy Resources, LLC*, 276 A.3d 729, 734 (Pa. Super. 2022) (citation omitted).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the

- 11 -

contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. . . .

"In construing a contract, we must give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it."

"[W]hen the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document," and "this Court need only examine the writing itself to give effect to the parties' understanding. [We] must construe the contract only as written and may not modify the plain meaning under the guise of interpretation."

*Id*. at 736 (citations omitted).

However, when the terms of a contract

are ambiguous, it is permissible to ascertain their meaning through parol (*i.e.*, extrinsic) evidence. Contractual terms are ambiguous "if they are subject to more than one reasonable interpretation when applied to a particular set of facts." A contract is not ambiguous, however, merely because the parties do not agree on its construction. Nor does ambiguity exist if it appears that "only a lawyer's ingenuity has made the language uncertain."

*Pass*, 229 A.3d at 5 (citations omitted).

"To establish a breach of contract occurred, the party must prove: '(1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resultant damages.'" *Linde v. Linde*, 210 A.3d 1083, 1090 (Pa. Super. 2019) (citation omitted).

- 12 -

With respect to a condition precedent within a contract, this Court has found guidance in the Restatement (Second) of Contracts, Sections 224 and 225. We have stated:

Under § 224, "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Pursuant to § 225:

(1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.

(2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.

(3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

Restatement (Second) of Contracts § 225. *__Generally, an act or event designated in a contract will not be construed as a condition unless that clearly appears to be the intention of the parties__*."

*__True R.R. Assocs., L.P. v. Ames True Temper, Inc.__*, 152 A.3d 324, 341 (Pa. Super. 2016) (some citations omitted and emphasis added).

As stated above, Plaintiff asserts the trial court erred in concluding Section 6.22 of the Agreement created a condition precedent — that first, the transaction between Plaintiff and CVRDC must meet the requirements of a

Complying Disposition as defined in the ROFR Agreement.[10] Trial Court Opinion, 12/10/24, at 7. For ease of review, we quote Section 6.22 again:

> 6.22 **Contracts; ROFR.** There are no unrecorded agreements, documents or contracts affecting the Property, other than the ROFR. The ROFR has been waived and released by Matrix . . . effective April 7, 2020, **subject to** the ROFR requirement to complete the transactions provided for in this Agreement as a Complying Disposition (as defined in the ROFR) within one (1) year of such release.

Agreement of Sale, 7/10/20, at 11 (emphasis added). Plaintiff presents the following multiple theories.

First, Plaintiff avers that a plain reading of Section 6.22 reveals there was no condition precedent. Instead, the trial court should have found that Section 6.22 was an affirmative "representation and warranty by" CVRDC that: (1) Matrix had in fact provided "a binding ROFR waiver;" (2) the contemplated sale to Plaintiff was a Complying Disposition in conformity with the ROFR Agreement; and thus (3) CVRDC and Plaintiff "could proceed under the Agreement." Plaintiff's Brief at 38, 43. Plaintiff maintains the trial court mistakenly "read into Section 6.22 the notion that it was subject to the condition that the transaction . . . met the requirements of a Complying Disposition." *Id*. at 43 (emphasis omitted). Plaintiff insists, "This is not the

---

[10] Plaintiff does not challenge the trial court's finding that the condition precedent was not fulfilled. Instead, here Plaintiff merely contests the trial court's interpretation of Section 6.22 as creating a condition precedent.

language employed, and this insertion is not supported by a plain reading." *Id*.

Second, Plaintiff asserts the trial court failed to consider Section 6.22 "*in pari materia*" with other provisions of the Agreement. *Id*. at 42, 44, 45, 47. Plaintiff contends that other provisions in the Agreement — which "obligated [CVRDC] to convey clear title," sell the Property to Plaintiff, "deliver a ROFR waiver," and be "[monetarily] liable to Plaintiff if it could not deliver clear title" — did create conditions by use of the phrases, "is conditioned upon" and "is expressly conditioned upon." *Id*. at 47. Plaintiff reasons that the absence of this language in Section 6.22 showed the parties did not intend to create a similar condition. In the alternative, Plaintiff surmises that the parties' failure to set forth conditional language in Section 6.22 "create[d] an ambiguity at least requiring reversal of" the summary judgment granted in favor of CVRDC. *Id*. at 48.

Finally, Plaintiff asserts the trial court misinterpreted the parties' intent. In support, Plaintiff explains that it "did not want to incur the time or expense of negotiating a contract or engaging in due diligence if Matrix could swoop in and buy the [P]roperty[, and o]n this basis, [Plaintiff had] insisted that [CVRDC] represent and warrant . . . that a ROFR waiver had occurred." *See* Plaintiff's Brief at 44. Plaintiff alleges that this intent by the parties was "confirmed by . . . CVRDC's own averments in its underling [summary

judgment] motion and . . . prior submissions to the [trial] court." *Id*. (unnecessary capitalization omitted).

In its Rule 1925(a) opinion, the trial court again rejected Plaintiff's contention that Section 6.22 was a representation or warranty by CVRDC. The court reiterated its determination instead that Section 6.22's phrase, "subject to," created a condition precedent that had "to be satisfied before the parties had a duty to perform under the Agreement." Trial Court Opinion, 2/24/25, at 6. The court reasoned that it "could not simply ignore the 'subject to' language that followed" the statement that "the ROFR has been waived and released." *Id*. Additionally, the court "found that the operative phrase, 'subject to,' was not ambiguous." *Id*. In support, the court cited the Merriam-Webster Dictionary's definition of "subject to:" "1) affected by or possibly affected by (something), 2) likely to do, have, or suffer from (something), and 3) dependent on something else to happen or be true." *Id*. at 7 (quotation marks omitted) (*quoting*, *inter alia*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/subject%20to (Last Updated: February 16, 2025)).

After our review of Section 6.22 and the Agreement as a whole, we likewise determine Section 6.22 is clear and unambiguous, and that it created a condition precedent. *See Dressler Family, LP*, 276 A.3d at 734; *see also True R.R. Assocs.*, 152 A.3d at 341. First, we reject Plaintiff's contention that the plain language of Section 6.22 did not create a condition precedent.

We find meritless Plaintiff's insistence that there was no language within Section 6.22 to support "the notion that [Section 6.22] was **subject to the condition** that the [sale between Plaintiff and CVRDC] met the requirements of a Complying Disposition." Plaintiff's Brief at 43 (emphasis in original). The phrase, "subject to," appears in Section 6.22, and indeed, Plaintiff quotes it just after its above argument. **Id**. Plaintiff does not respond to the trial court's reasoning that it could not ignore this phrase. **See** Trial Court Opinion, 2/24/25, at 6. Plaintiff also does not address the court's discussion of Merriam-Webster's definition of the phrase, "subject to." The court correctly points out that this definition includes the meaning, "dependent on something else to happen or be true." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ subject%20to (Last Updated: November 16, 2025).

Reading the entirety of Section 6.22, we determine that its statement, that Matrix waived its right of refusal, was subject to or dependent on the transaction, between CVRDC and Plaintiff, meeting the definition of a Complying Disposition. We therefore determine this language created a condition precedent, which, if not met, excused both parties' performance under the Agreement. **See True R.R. Assocs.**, 152 A.3d at 341. On this basis, we also reject Plaintiff's contention that Section 6.22 was an affirmative, binding representation by CVRDC that Matrix had, without any provisos, waived its right of first refusal.

Furthermore, as the language of Section 6.22 was clear and unambiguous, we determine that its four corners embodied CVRDC's and Plaintiff's intent, including an intent to designate a condition precedent. *See Dressler Family, LP*, 276 A.3d at 736; *see also True R.R. Assocs., L.P.*, 152 A.3d at 341. Accordingly, we do not consider Plaintiffs' present attempt to explain that, in executing the Agreement, it had "insisted that [CVRDC] represent and warrant . . . that a ROFR waiver had occurred," nor Plaintiff's contention CVRDC's trial court filings reflected its intent when entering into the Agreement. Plaintiff's Brief at 44. The trial court properly interpreted the meaning of Section 6.22 "by its content alone, within the four corners of the document." *Dressler Family, LP*, 276 A.3d at 736.

Finally, we determine no relief is due on Plaintiff's claim that the trial court should have read Section 6.22 *in pari materia* with other provisions of the Agreement. First, we note the concept of "*in pari materia*" generally arises in statute interpretation, rather than contract interpretation. *See, e.g.* 1 Pa.C.S.A. § 1932(a)-(b) (stating that: (a) "[s]tatutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things;" and (b) "[s]tatutes *in pari materia* shall be construed together, if possible, as one statute"). Nevertheless, as stated above, Pennsylvania courts have held that "[t]he whole instrument must be taken together in arriving at contractual intent," and "we must give effect to

all of the provisions therein," without interpreting one part of a contract in a manner that would annul another. ***Dressler Family, LP***, 276 A.3d at 736.

However, we reiterate our conclusion that Section 6.22's phrase, "subject to," was clear and unambiguous, and created a condition precedent. The presence of the phrase, "is conditioned upon," in other provisions within the Agreement does not affect, and is not in conflict with, this interpretation of Section 6.22. We may give effect to each of these provisions without annulling another. ***See id***.

Finally, we deny relief on Plaintiff's claim issue that the trial court failed to

> apply the binding Pennsylvania Supreme Court precedent cited by Plaintiff that a claim arising from a failed representation or warranty is a strict liability offense, and the intent or mindset of the maker is immaterial. Stated otherwise, in representing and warranting that a ROFR waiver had occurred, [CVRDC] expressly assumed the risk that it had not, which if both logical and equitable as these were issues solely within [CVRDC's] control.

Plaintiff's Brief at 29 (unnecessary capitalization omitted).

First, we note Plaintiff does not cite any legal authority in support of this claim. ***See*** Pa.R.A.P. 2119(a). In any event, to the extent Plaintiff avers CVRDC made a representation or warranty that Matrix had in fact waived its right of first refusal, we have rejected this claim above. For all the foregoing reasons, we conclude Section 6.22 created a condition precedent, and no relief is due on Plaintiff's first issue. ***See True R.R. Assocs.***, 152 A.3d at 341.

In its second issue, Plaintiff avers that "[i]n reading Section 6.22 to create a condition precedent," the trial court failed to "apply binding precedent regarding represented [*sic*] and warranties, while contradicting its own prior holding." Plaintiff's Brief at 49. Plaintiff avers there is no legal authority to support the court's "conclusion that a contractual clause clearly stating that it is a 'representation' or a 'warranty' made by one party for the benefit of the other is somehow a condition precedent to the other party's obligations." **Id**. Instead, Plaintiff reasons:

> [A] representation or warranty . . . is a contractual apportionment of risk between the parties, and thus . . . a party's belief as to the truth of a statement is irrelevant. Either the statement is true or it is false. **See e.g. Samuel-Bassett v. Kia Motors Am., Inc.**, [34 A.3d 1, 25 (Pa. 2011)] (noting that a breach of contractual warranty plaintiff need not prove that it read, let alone relied upon a warranty, in entering into a contract in order to prevail on a claim of the breach thereof)[.[11]]

Plaintiff's Brief at 49. Plaintiff concludes:

> Pennsylvania Supreme Court precedent is clear that **even if** CVRDC reasonably believed it representation and warranty to be true when made [*sic*[12]], if it is later proven false — as the court's

_____

[11] Here, Plaintiff cites two additional judicial decisions in support. Plaintiff's Brief at 49. However, as they are decisions of our Courts of Common Pleas, they carry no binding precedential weight. **See Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.**, 126 A.3d 959, 972 (Pa. Super. 2015) (stating that Court of Common Pleas "decisions provide, at most, persuasive but not binding authority").

[12] Plaintiff's brief makes several references to a "re-trade," but does not explain the meaning of this term. **See, e.g.,** Plaintiff's Brief at 15 (first referring to a "re-trade" as follows: "Similarly to many of the foregoing provision[*sic*], Section 16.1 contains no caveat or exception with respect to a

*(Footnote Continued Next Page)*

prior holding in granting Matrix's summary judgment motion that there was a re-trade made it [*sic*], then such belief is irrelevant, and a breach has occurred. In fact, this is confirmed by the Agreement itself, which required that [CVRDC] make such a representation both at execution **and at closing!**

***Id***. at 51 (emphases in original).

Some of these arguments overlap with Plaintiff's above claims. First, to the extent Plaintiff avers that Section 6.22 "clearly stat[ed] that it [was] a 'representation' or a 'warranty' made by one party for the benefit of the other," we have rejected this contention. ***Id***. at 49. Instead, Section 6.22 created a condition precedent — that Matrix's waiver of its right was "subject to," or dependent on, the sale between CVRDC and Plaintiff meeting the definition of a Complying Disposition.

Second, Plaintiff's reference, to "CVRDC's reasonably believ[ing its] representation and warranty [was] true when made, [even] if it is later proven false," echoes its earlier claim concerning strict liability. Plaintiff's Brief at 29, 51. However, we reiterate our holding that Section 6.22 was not an express representation or warranty, but rather set forth a condition precedent. Plaintiff's presentation of the same underlying arguments merits no relief.

Finally, Plaintiff relies on ***Samuel-Bassett***. In that matter, a class action lawsuit against an automobile manufacturer alleged breach of an

_____

claim by Matrix (or a finding by the Court) that a "***re-trade***" triggered the need for a new Disposition Notice") (emphasis added), 20 (stating Plaintiff's "consistent position that no ***re-trade*** had occurred") (emphasis added).

express warranty that the vehicles, including their brakes, were "free from defects in material and workmanship." ***Samuel-Bassett***, 34 A.3d at 11. The manufacturer argued that "to recover, each class member had to prove individually that s/he read the warranty — a clause of the purchase contract — and relied on it in seeking brake repairs." ***Id***. at 24. Our Supreme Court stated, in pertinent part:

> A written express warranty that is part of the sales contract is the seller's promise which relates to goods, and it is part of the basis of the bargain. 13 Pa.C.S. § 2313(a)(1). This statement of law is not qualified by whether the buyer has read the warranty clause and relied on it in seeking its application.

***Samuel-Bassett***, 4 A.3d at 25.

In the instant appeal, Plaintiff cites the latter sentence above — that a "plaintiff need not prove that it read, let alone relied upon a warranty, in entering into a contract in order to prevail on a claim of the breach thereof." ***See*** Plaintiff's Brief at 49. However, this tenet does not appear to apply in the case *sub judice*; there is no claim that Plaintiff has "not read the warranty clause and relied on it in seeking its application." ***Samuel-Bassett***, 4 A.3d at 25. For the foregoing reasons, no relief is due on Plaintiff's second issue.

In its final issue, Plaintiff argues that regardless of our ruling on Section 6.22, the trial court erred in "ignoring" that CVRDC breached other clauses of the Agreement. Plaintiff's Brief at 31. Plaintiff divides its argument under three sub-headings, which we address *seriatim*.

First, Plaintiff avers CVRDC breached Section 8.2 of the Agreement, which stated:

> 8.2 **No Shop.** While this Agreement remains in effect, neither [CVRDC] nor any of its affiliates will make, accept, negotiate or otherwise pursue any offers for the sale or purchase of the Property.

Plaintiff's Brief at 31 (*quoting* Agreement of Sale, 7/10/20, at 13). Plaintiff reasons that this section "expressly prohibits [CVRDC] from offering to sell the Property to ***anyone*** during the pendency of the Agreement, which necessarily includes Matrix." ***Id***. at 33 (emphasis in original). Plaintiff asserts CVRDC breached this clause by issuing the Second Disposition Notice to Matrix and thereby "offering it the opportunity to purchase the property." ***Id***. at 32. Plaintiff also argues, in the alternative, that even if this Court were to disagree, "the implied covenant of good faith and fair dealing plainly renders [CVRDC's] having done so a breach as this act was anathema to the parties' agreement." ***Id***. at 34.

As stated above, "[i]n construing a contract, we must give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it." ***Dressler Family, LP***, 276 A.3d at 736. Furthermore, we consider:

> It is hornbook law that, to form a contract, there must be an offer, acceptance, and consideration.[] "An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."

***Somerlot v. Jung***, 343 A.3d 324, ___ (Pa. Super. 2025).

After careful review, we determine CVRDC did not breach Section 8.2.[13] *See Dressler Family, LP*, 276 A.3d at 734; *see also Linde*, 210 A.3d at 1090. In interpreting Section 8.2, we must consider it along with any other provisions of the Agreement that relate to the issue of another potential purchaser of the Property. *See Dressler Family, LP*, 276 A.3d at 736. We emphasize that the Agreement acknowledged Matrix's right of first refusal to purchase the property and made multiple references to the ROFR Agreement between Matrix and CVRDC. *See* Agreement of Sale, 7/10/20, at 4-6, 8, 11. Indeed, Section 6.22 recognized, "There are no unrecorded agreements, documents or contracts affecting the Property, *other than the ROFR*." *Id*. at 11 (emphasis added).

The plain language of Section 8.2 provided that CVRDC will not "make, accept, negotiate or otherwise pursue *any offers for the sale* . . . of the Property." Agreement of Sale, 7/10/20, at 13 (emphasis added). We determine that CVRDC's Second Disposition Notice was not an "offer" to sell the Property to Matrix. Instead, the Second Disposition Notice was merely a

_____

[13] The trial court found CVRDC did not breach Section 8.2 because "the Agreement was invalid and unenforceable where the [First] Disposition [Notice] was non-compliant[, and t]he Agreement was no longer in effect once CVRDC issued the [Second] Disposition [Notice]." Trial Court Opinion, 2/24/25, at 19. On the same grounds, the court found no breach of the implied covenant of good faith and fair dealing. However, our review of a contract interpretation issue is *de novo*, and we determine CVRDC did not breach Section 8.2, albeit on different grounds. *See Dressler Family, LP*, 276 A.3d at 734.

notice advising Matrix of CVRDC's anticipated sale of the Property to another purchaser, and the terms of that potential sale. Matrix could then opt to exercise or waive a pre-existing contractual right to purchase the Property. The Second Disposition Notice was not "a manifestation of willingness to enter into a bargain," nor an invitation to form a second contract. **See Somerlot**, 343 A.3d at ___. Because CVRDC did not "make, accept, negotiate or otherwise pursue any offers for the sale . . . of the Property," it did not breach Section 8.2.

The next sub-claim in Plaintiff's final issue is that CVRDC breached other provisions in the Agreement, which obligated CVRDC, "unconditionally and without caveat," to deliver Matrix's ROFR waiver, sell and convey clear title of the Property to Plaintiff, and pay monetary damages if it failed to do so. **See** Plaintiff's Brief at 35 (*citing* Sections 2, 4.1, 4.2, 5.1.5, 9.3, 16.1, 17.1 of the Agreement).

Plaintiff does not set forth the language of the above seven cited Agreement clauses, but rather merely refers to their paragraph numbers. As Plaintiff has failed to discuss the explicit contract terms it now claims CVRDC has breached, we determine it has waived this argument. **See** Pa.R.A.P. 2119(a) (requiring argument to set forth "the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"); **Matthew 2535 Props., LLC v. Denithorne**, 313 A.3d 223, 231 (Pa. Super. 2024) (*en banc*) (stating that it is well settled that undeveloped

claims are waived on appeal, and when "defects in a brief prevent meaningful review, the issue may be found waived").

Moreover, even if we were to reach the merits of Plaintiff's claims, we would determine no relief is due. Section 2 of the Agreement, cited by Plaintiff, states:

> [2. Plaintiff] shall purchase the Property from [CVRDC], and [CVRDC] shall sell, convey, transfer and assign the Property to [Plaintiff] **subject to and in accordance with the terms and conditions of this Agreement**.

Agreement of Sale, 7/10/20, at 5 (emphasis added).

While Section 2 provides that CVRDC "shall sell" and convey the Property to Plaintiff, the plain language further states that such action is "subject to . . . the terms and conditions of this Agreement." **Id**. We incorporate our above discussion concerning Section 6.22, its inclusion of the phrase, "subject to," and the principles that we must "give effect to all of the provisions" of a contract and may not assign an interpretation of one provision that "will annul another part of it." **Dressler Family, LP**, 276 A.3d at 736. We would disagree with Plaintiff's insistence that Section 2 obligated CVRDC, "unconditionally and without caveat," to convey the Property to it. Plaintiff's Brief at 35. The plain language of Section 2 included such a caveat, indicated by the phrase, "subject to," and specified it must consider "the terms and conditions of this Agreement." Agreement of Sale, 7/10/20, at 5. Again, Section 6.22 created a condition precedent — that the terms of the Agreement

encompass a Complying Disposition — which, if not fulfilled, excused the parties from performance.

Additionally, the plain language of Section 5.1.5 of the Agreement, cited by Plaintiff, stated:

> [5.1.5] **Documents to be Delivered by [CVRDC.** CVRDC] shall deliver to [Plaintiff], no later than ten (10) Business Days after the date hereof, each of the following items . . . ***that are in [CVRDC's] actual possession or control[:]*** . . . The ROFR Waiver . . . from Matrix . . ..

Agreement of Sale, 7/10/20, at 6-7 (emphasis added).

The trial court found that "CVRDC never actually physically possessed a waiver," and thus it "was incapable of delivering the ROFR waiver to the title company or Plaintiff." Trial Court Opinion, 2/24/25, at 11. In an event, the trial court reasoned, "it would not have been possible for CVRDC to breach the Agreement," as Section 6.22 created a condition precedent that must occur before the parties were required to perform — that the sale between CVRDC and Plaintiff be a Complying Disposition as defined in the ROFR Agreement.[14] *Id*.

---

[14] In this section of the February 24, 2025 opinion, the trial court reasoned "the Agreement was invalid and unenforceable" because its terms did not match those in the First Disposition Notice. Trial Court Opinion, 2/24/25, at 11. We disagree with this conclusion, that because the condition precedent was not fulfilled, the Agreement was "invalid." Instead, we agree with the court's earlier reasoning in the same opinion, that where "the condition precedent had not been met, . . CVRDC's duty to perform under the Agreement did not arise." *Id*. at 7.

We would agree that CVRDC did not breach Section 5.1.5.  ***See Linde***, 210 A.3d at 1090.  The plain language of this section required CVRDC to deliver an ROFR waiver that was in its "actual possession or control." Agreement of Sale, 7/10/20, at 6-7.  In insisting that Section 5.1.5 "unconditionally and without caveat" obligated CVRDC to provide a waiver from Matrix, Plaintiff improperly excises this modifier, "that [is] in [CVRDC's] actual possession or control."  Plaintiff's Brief at 35.  Furthermore, we must read Section 5.1.5 in conjunction with Section 6.22, which again created the condition precedent that the sale, between CVRDC and Plaintiff, be a Complying Disposition as contemplated by the ROFR Agreement.  As this condition was not met, CVRDC was excused from performing its duties under the Agreement.  ***See True R.R. Assocs.***, 152 A.3d at 341.

In the third part of Plaintiff's final issue, it avers "the trial court erred in finding that CVRDC's lack of physical possession of a ROFR waiver allow[ed] it to escape liability for its breach of those sections obligating [it] to deliver a ROFR waiver."  Plaintiff's Brief at 36.  We note Plaintiff does not refer to Section 5.1.5, although, as stated above, this clause provided that CVRDC shall provide an ROFR waiver from Matrix that is in its "actual possession or control."  Agreement of Sale, 7/10/20, at 6-7.

Plaintiff avers that "Pennsylvania rejects a narrow 'physical possession' test," and instead focuses "on whether the party has a legal right to custody or control of the document(s) in question."  Plaintiff's Brief at 36.  Plaintiff

then reasons that Paragraph 3(b) of the ROFR Agreement "contractually obligated" Matrix to "deliver a written confirmation of its waiver of its ROFR within ten (10) days of CVRDC's request," and thus "CVRDC did, in fact, have a legal right to the ROFR waiver." *Id*. at 36-37. Plaintiff then reiterates that other provisions of the Agreement required CVRDC to "remove the ROFR as a title exception ***without caveat or exception***." *Id*. at 37 (emphasis in original). Plaintiff concludes that if Matrix refused to provide the waiver, then CVRDC could "and should have issued a notice of default" or sued Matrix. *Id*.

The trial court rejected Plaintiff's argument that it should apply the "'physical possession test' employed by Pennsylvania courts," as the test "applies in the context of discovery when parties are being subpoenaed, for example." Trial Court Opinion, 2/24/25, at 18. The court thus reasoned this test was not applicable here. In any event, the court found there was "no way that it could have determined that the ROFR was in CVRDC's custody," where Matrix had refused to provide it. *Id*.

After review, we similarly determine Plaintiff is not entitled to relief. Plaintiff does not address the trial court's reasoning, with which we agree, that the "physical possession test" applies in discovery, and thus is not applicable in this summary judgment and contract interpretation issue. ***See Tribune-Review Publ'g Co. v. Westmoreland Cty. Hous. Auth.***, 833 A.2d 112, 118 (Pa. 2003) (stating that pursuant to Pa.R.Civ.P. 4009.1, "involving discovery in a civil action, a party is required to produce requested documents if they

are within its 'possession, custody or control,'" and "[i]n construing this rule, the courts of the Commonwealth reject a narrow 'physical possession' test, focusing instead on whether the subpoenaed party has a legal right to custody or control of the documents in question").  In any event, Plaintiff ignores that Matrix's waiver of its right of first refusal, in response to the First Disposition Notice,[15] was no longer valid once Plaintiff and CVRDC executed an agreement that contained different terms.  *See* ROFR Agreement, 6/8/16, at unnumbered 4 (providing that if CVRDC "does not [sell the Property] pursuant to an agreement on terms which would be a Complying Disposition . . . within one (1) year . . . , then Matrix's right of first refusal will be reactivated [and CVRDC] would be required to give a new Disposition Notice . . . which would again trigger Matrix's right of first refusal").  Thus, no valid ROFR waiver existed.  Accordingly, we conclude Plaintiff is not entitled to relief under a "physical possession test" theory.  For all the foregoing reasons, Plaintiff is not entitled to relief on its final issue.

Having concluded that none of Plaintiff's claims merit relief, we further determine the trial court did not err or abuse its discretion in denying Plaintiff's motion for summary judgment and granting CVRDC's motion for summary judgment.  *See Pass*, 229 A.3d at 5.  We thus affirm the trial court's order.

---

[15] We reiterate that in response to the Second Disposition Notice, Matrix exercised its right to purchase the Property.

Order affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>01/14/2026</u>